**In the Matter of Skeeter Dale BENEDICT and Victoria Lee Benedict, Debtors.**

**The MORRIS PLAN COMPANY OF IOWA, Plaintiff,**

v.

**Skeeter Dale BENEDICT and Victoria Lee Benedict, Defendants.**

**Bankruptcy Nos. 80–01349–3, 80–01350–3. Adv. No. 80–0290–3.**

United States Bankruptcy Court, W. D. Missouri, W. D.

March 30, 1981.

FINAL JUDGMENT DECREEING INDEBTEDNESS OF SKEETER DALE BENEDICT TO THE PLAINTIFF TO BE NONDISCHARGEABLE IN BANKRUPTCY AND THAT, ACCORDINGLY, THE PLAINTIFF SHOULD HAVE AND RECOVER THE VALUE OF ITS SECURITY FROM THE DEFENDANT SKEETER DALE BENEDICT AND FINAL JUDGMENT OF DISMISSAL OF COMPLAINT AS TO THE DEFENDANT VICTORIA LEE BENEDICT

DENNIS J. STEWART, Bankruptcy Judge.

On October 20, 1980, this court entered its judgment declaring the defendants' indebtedness to the plaintiff to be dischargeable in bankruptcy over the objection of the plaintiff that the liability was created by

fraud within the meaning of section 523(a)(2) of the Bankruptcy Code.

Thereafter, on December 11, 1980, the plaintiff filed a "motion to vacate judgment in part." In this motion and the suggestions filed in support thereof, the material point made was that the lien of the prior lienholder on the vehicle which was also the subject of the plaintiff's lien, which the defendants had claimed to be extinguished by full payment, had actually not been expunged. If this were true, then the basis for the former judgment of the court would be removed. For, in the findings supporting the challenged judgment of October 20, 1980, the court had found that the defendant Skeeter Dale Benedict had been the maker of a material misrepresentation to the plaintiff in the following manner:

"(T)o attempt to ensure that the plaintiff actually receive the benefit of this intended senior and paramount lien, the plaintiff's office manager, Mr. Kocher, asked Mr. Rice, on March 20, 1979, in the presence of Skeeter Dale Benedict (but not Victoria Lee Benedict) whether the $500 contemplated down payment (to Mr. Rice so as to avoid his taking a first lien) had actually been made. Mr. Rice's reply was in the affirmative.

"Both Mr. Rice and Mr. Benedict, however, knew the answer to be false, for the defendants and Mr. Rice had previously entered into an agreement whereby they promised to pay the sum of $500 to Rice on or before April 4, 1979 .... After the consummation of the sale of the automobile on March 20, 1979, however, Mr. Rice had a new title certificate issued by the State of Iowa upon which he was noted to be the first lienholder and the plaintiff herein was listed as the second lienholder."

In the judgment of October 20, 1980, however, the court nevertheless held that plaintiff was not entitled to the decree of nondischargeability against defendant Skeeter Dale Benedict because:

"(t)he uncontradicted evidence also shows that, on or about April 19, 1979, and prior to the debtors' filing their petition herein for relief (on May 6, 1980), Mr. Benedict satisfied Mr. Rice's lien on the automobile by paying $500 to Mr. Rice, principally from the proceeds of some casualty insurance benefits .... (T)o create a liability which is nondischargeable in bankruptcy, the misrepresentation must be material and must result in injury to the plaintiff. The evidence in this case does not sustain either element. Rather, it shows that the defendants' actually making the $500 down payment, albeit not on March 20, 1979, but nevertheless within 30 days thereof, renders any meantime misrepresentation immaterial. And this is so even though Mr. Rice was thereby enabled to obtain a security interest superior to that of Morris Plan. For, as of April 19, 1979, that lien, according to the uncontradicted evidence herein adduced, was wholly satisfied and extinguished. And plaintiff then had, far in advance of any claim which might be made by the trustee herein in bankruptcy, its unlimited and paramount security interest in the automobile. It thus suffered no injury on account of the false pretense or misrepresentation of Mr. Benedict. For, as of April 19, 1979, in respect of the contract itself, Morris Plan had everything that it bargained for. Any injury suffered by it is due to the Benedicts' later default in payment. But failure to make payment in accordance with the terms of the contract does not, either ordinarily or under these circumstances, constitute fraud."

After the filing of the plaintiff's motion to vacate the judgment of October 20, 1980, the court issued its order directing the defendants to show cause why their discharges in bankruptcy should not be denied for failure to have the lien of Mr. Rice expunged, stating that, "in order for the defendants to avail themselves of equitable relief in the form of a discharge in bankruptcy, it appears only fair that they should be required to do equity and accordingly undertake and accomplish the measures necessary to extinguishing the record of

any first lien except that held by the plaintiff."

In their response to that order, the defendants and their counsel professed ignorance of the means by which the expunction of the first lien could be achieved. Whereupon the court, by the terms of its order entered herein on February 2, 1981, directed the defendants to attempt the expunction by written inquiry of the appropriate state agency in Iowa as to how the expunction might be achieved.

In response to that order, the defendants produced copies of letters which they had purportedly addressed to the Iowa vehicle licensing agency requesting to know how the lien might be expunged. But those letters did not contain any effective claim that the underlying debt had been paid off. For the letters purported to be from Victoria Lee Benedict, who did not profess to have personal knowledge, in the course of the prior trial, of the payment *vel non* of the $500.

In the meantime, on January 30, 1981, the plaintiff filed a document entitled "plaintiff's reply to defendants' response to order directing defendants to show cause," in which the plaintiff, for the first time in any of the post-judgment proceedings, raised with sufficient explicitness the contention that the defendant Skeeter Dale Benedict had in fact not paid the $500 to Steve Rice as Benedict had testified without contradiction in the trial of this action. Thus, in the "reply" of January 30, 1981, the plaintiff stated that:

> "The Defendants deceive this Court. They portray the problem of extinguishing (Steve Rice's) first lien as one of 'executing documents' only. The truth is that, contrary to this court's holding, as is shown by the continued existence of said first lien ahead of plaintiff's, defendants have *never* paid to Steve Rice the $500.00 on the Note that Defendant Skeeter Benedict gave to Steve Rice in the fraud upon Plaintiff. *That is the only reason why the first lien has never been cured.*" (Emphasis in original.)

Therefore, when the defendants' responses were less than satisfactory and indicated that they did not continue to make any unequivocal assertion of payment, the court entered its order on March 3, 1981, setting aside the decree and judgment of dischargeability entered in favor of Skeeter Dale Benedict and setting a new trial. In that order, this court found that the prospective testimony of Steve Rice constituted newly discovered material evidence which would warrant a new trial on the issue of whether payment was actually made.

On March 9, 1981, however, the plaintiff filed its "motion to vacate new trial hearing date and motion for resolution of this matter by the court on the record." In that motion, plaintiff asserted that it was not possible to secure the testimony of Steven Rice and further stated that:

> "The Court's recognition of the potential probative value of Mr. Rice's testimony is based, in part, on Plaintiff's asserted position that, despite the testimony to the contrary by Benedict, Benedict did *not*, in fact, pay the $500.00 down payment to Rice. This proposition is based on two elements. One element, not previously presented to this Court, is that, in the course of the dealings under examination in this case, Mr. Rice informed Kenneth A. Kocher, plaintiff's manager of the office of the plaintiff in which the Benedict loan was processed, that Benedict had not paid the $500.00 which was why Mr. Rice refused Benedict's demands to release the first lien on the subject automobile. The other element, already presented to this Court, is that the continued existence of the first lien in Mr. Rice's name on the subject automobile is *prima facie* proof that the promissory note in the amount of $500.00 plus interest, upon which the said lien is predicated, has *not* been paid by Benedict. Of course, Benedict could not and has not presented the original of the note marked 'paid' under the signature of Mr. Rice." (Emphasis in original.)

These considerations, however, could not warrant the court in entering a judgment in favor of the plaintiff on the issue of dischargeability *vel non*. Whatever proba-

tive value the nonexpunction of Rice's lien might have on the issue was more than dispelled by the uncontradicted testimony of Benedict that he in fact made the payment. Such oral testimonial evidence of payment is admissible even without the accompanying documentary proof which plaintiff now insisted to be necessary. Further, the adverted to, potential testimony of Kenneth A. Kocher appeared to be inadmissible hearsay coming within none of the recognized exceptions to the hearsay rule. Thus, the considerations which the plaintiff offered could not, without more, warrant the rendition of a judgment in its favor.

Plaintiff further contended that the court's finding of misrepresentation in the initial findings of fact and conclusions of law in the judgment which had been set aside warranted a judgment in its favor without any finding that the plaintiff relied on the misrepresentation *to its detriment.* In this regard, the plaintiff stated that:

"the crux of the statute is: . . . 'whether the money would have been loaned if the creditor had known the truth regarding the financial (condition of the debtor)' . . . That is the harm and injury induced by a debtor's fraud, which mandates nondischargeability of the debtor for a debt so obtained . . . "

The misrepresentation which was found, however, by this court to have been made by the defendant Skeeter Dale Benedict was one which was not on the subject of his financial condition or ability to pay, but rather one which affected the value of the security which was offered by the defendants to secure the value of the debt. If the plaintiff received all they bargained for in this regard, then there would be no detriment which would give rise to a nondischargeable liability within the meaning of section 523(a)(2) of the Bankruptcy Code.[1]

Therefore, on March 17, 1981, the court therefore issued its order setting the new trial for March 30, 1981, observing as follows:

"It . . . appears necessary to conduct a hearing at some time in the future, if on no other issue, on the issue of whether the defendants can timely have the lien of Steve Rice expunged. If they cannot do so within a reasonable time, then, of course the plaintiff will have suffered the damage necessary to require the decree of nondischargeability to be entered against Skeeter Dale Benedict.

"The counsel for defendants has requested to March 27, 1981, in which to accomplish the expunction of the lien notation. The court has to be in St. Joseph, Missouri, on that date. It is therefore necessary that the hearing be continued to March 30, 1981 at 10 a. m."

On March 30, 1981, consequently, the new trial was conducted, at which the testimony of the defendant Skeeter Dale Benedict was again presented respecting the conversation of March 20, 1979, during which he permitted Mr. Rice to make the representation in his presence that the $500.00 had been paid, a misrepresentation which he knew not to be true and which he knew to be of vital importance to plaintiff.[2] Thus, the testimony rendered was in all material respects substantially the same as it had been in the prior hearing.[3] Therefore, it warrants a finding that a misrepresentation going to the value of the collateral was made by the

---

1. Which, *inter alia*, requires "that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975), quoting from *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va. 1967).

2. The representative of the plaintiff had impressed upon Mr. Benedict repeatedly that the loan would not be extended unless the $500 down payment to Rice were in fact made.

3. As in the initial hearing, there was evidence elicited from the defendant Skeeter Dale Benedict by his own counsel to the effect that he believed, at the time the misrepresentation was made, that the $500 down payment had been "taken care of" by reason of Rice's agreement to accept a promissory note for it. But, as noted in note 2, *supra*, plaintiff's representative had made it clear that it was necessary that the down payment have already been made. Thus, at the time of the misrepresentation, the defendant Skeeter Dale Benedict knew that the plaintiff's representatives were being misled.

defendant Skeeter Dale Benedict and that the misrepresentation was relied upon by the plaintiff in granting the loan here in question.

Further, the defendants' counsel admitted in the course of the hearing that the defendants had not yet been able to submit satisfactory evidence of payment of the $500 underlying Rice's lien to cause the State of Iowa to expunge that lien. Nearly two months had been granted the defendants for the accomplishment of this task and two separate deadlines have been established by the court during that two-month period, neither of which has been met.[4] The defendants contend that the expunction of this lien is still a reasonable prospect within a reasonable period of time and that it can be accomplished as soon as they can obtain from the State Farm Insurance Company a copy of Mr. Benedict's endorsement of a benefit check to the order of Mr. Rice. But the plaintiff cannot be required to wait an unreasonable period of time for this to happen, particularly in view of the ample time which the defendants have already been granted in which to accomplish the expunction. Therefore, the decree of nondischargeability should issue and a judgment for the value of the security. In order to promote justice, it will be provided that the judgment may be satisfied within 25 days of March 30, 1981, by production of the automobile to the plaintiff, free of the lien of Steve Rice. Thereafter, however, the judgment may be satisfied only by payment of the unpaid balance due on the loan, which, in the absence of other evidence, may be presumed to be the equivalent in value of the automobile.

Again, there is no evidence to implicate the defendant Victoria Lee Benedict in the misrepresentation. Hence, the nondischargeable judgment is to be rendered against Skeeter Dale Benedict only.

Accordingly, it is therefore

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the defendant Skeeter Dale Benedict to the plaintiff for the value of a 1975 Cadillac, serial number 6C49S5Q111713, be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that the plaintiff have and recover from the defendant the value of the same 1975 Cadillac. For a period of 25 days from and after March 30, 1981, this judgment is satisfiable by turnover of the 1975 Cadillac to the plaintiff, free of the lien of Steve Rice. Thereafter, the judgment is satisfiable by payment of sum of $3,354.13 plus interest thereon from and after November 29, 1979, at the rate of 7% per annum plus a delinquency charge of $6.96 and the reasonable costs of this action. It is further

ORDERED AND ADJUDGED that the plaintiff's complaint as to the defendant Victoria Lee Benedict be, and it is hereby, dismissed.

**4.** By means of its order entered herein on February 2, 1981, the court initially granted 20 days in which to accomplish the expunction or to explain why it could not be done. Later, in the order of March 17, 1981, the request of counsel for the defendants to have to and including March 27, 1981, to accomplish the necessary measures was honored.