**In the Matter of Robert CURRY fdba Mockusknott Auto Repair and Judy Curry, Debtors.**

**FIRST NATIONAL BANK IN FT. MYERS, Plaintiff,**

v.

**Robert CURRY and Judy Curry, Defendants.**

**Bankruptcy No. 80–1950.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

July 1, 1981.

Gordon R. Duncan, Fort Myers, Fla., for plaintiff.

Alfred E. Johnson, North Fort Myers, Fla., for debtors.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a contested discharge proceeding filed by the First National Bank of Fort Myers who seeks a determination of non-dischargeability of a debt admittedly owed by Mr. and Mrs. Curry, the Debtors involved in the above-captioned proceeding under Chapter 7 of the Bankruptcy Code. The Bank also seeks an order denying the discharge of Robert Curry.

The claims of the Bank are set forth in four counts. The claim set forth in Count I charges that both Debtors obtained, through actual fraud, monies from the Bank in the amount of $1,920 without the intention of repaying the loan.

The claim set forth in Count II also charges fraud and is based on the contention that the Debtors at the time they borrowed the money knew that they had no ability to repay the loan and borrowed the funds without any intention of repaying the same.

The claim set forth in Count III charges that the loan was obtained through false pretenses through the submission of a loan application in writing which was materially false on which the Bank reasonably relied in granting the loan.

The claim set forth in Count IV charges only Robert Curry and states that Robert Curry with intention to hinder, delay or defraud his creditors transferred to his brother-in-law certain properties within one year for less than fair consideration.

The evidence presented at the final evidentiary hearing reveals the following:

At the time pertinent to this transaction, Robert Curry was the owner and operator of an automotive repair service. His wife, Judy Curry, assisted him in the operation of the business. Sometime before September 22, 1980, Mrs. Curry went to the Bank and inquired about the possibility of obtaining a loan. The Curry's had a previous transaction with the Bank. Mrs. Curry informed the officer of the Bank that they needed the monies to catch up on their obligations and she initially sought a loan in the amount of $2,000. During the discussion, the officer of the Bank indicated that he would favorably consider the loan application if Mr. Curry would obtain steady employment. Mrs. Curry was given a prepared form entitled "Loan Application" (Pl's Exh. # 2). The application was filled out in the presence of the officer of the Bank by Mrs. Curry which indicated initially that the applicants are Robert Curry and Judy Lee Curry. The record reveals, however, that the name Judy Lee Curry was stricken and according to the testimony was stricken by the bank loan officer because he only considered the husband to be the applicant. The officer told Mrs. Curry that he would let her know in a few days whether or not the loan is granted.

Shortly thereafter, Mrs. Curry was informed by the officer that the loan was granted. Mrs. Curry went to the Bank and was given a promissory note (Pl's Exh. # 1) with instructions to have the same signed by her husband and by herself. Mrs. Curry took back the note to the repair shop. This was the first time she informed her husband about the transaction who never had any dealings with the Bank; did not request Mrs. Curry to negotiate for the loan and did not prepare the loan application; only signed the promissory note; and did not participate in the preparation of the loan application directly or indirectly. The loan was granted in the amount of $1,500. The amount owed by them at this time together with the finance charge is $1,920. There is no question that the loan application is not complete in that numerous obligations of both Mr. and Mrs. Curry which were already in existence were not listed on the application.

It further appears that Mr. Curry purchased tools from time to time from Snap-On Tool Corporation and at one time had tools of considerable value on hand.

Sometime in June of 1980, there was a break-in at the repair shop and several items were stolen. The record further reveals that after the break-in Mr. Curry purchased some additional tools, but because of the deterioration of the business, decided to liquidate the business and sold all of his tools to his brother-in-law for $1,000.

While evidence is in conflict on the value of the tools which were liquidated by him, it is fair to assume that they were sold substantially below cost. There is no evidence, however, that this was not a bona fide airtight sale; that it was merely a sham transfer and he still actually owns the tools and retains interest in the tools.

After the liquidation of the business, Mr. and Mrs. Curry decided to seek legal assistance in order to solve their financial problems and filed their voluntary petition on December 18, 1980.

At the conclusion of the evidence, counsel for the Debtors moved for a dismissal of all four counts on the ground that the Bank failed to establish a prima facie case and, therefore, is not entitled to the relief it seeks. The Court heard argument of counsel and granted the Motion and dismissed Count III and IV of the complaint, but denied the Motion with regard to the claims set forth in Count I and II. These claims are based on § 523(a)(2)(A), (B) and seek a declaration of non-dischargeability on a dual ground that the liability was created through false pretenses and actual fraud or in the alternative it was a liability created by the use of a statement in writing which

was materially false; was issued by the Debtors with intent to deceive; and on which the Bank reasonably relied.

The first claim of non-dischargeability is based on § 523(a)(2) of the Bankruptcy Code which provides in pertinent part as follows:

§ 523. *Exceptions to Discharge*

"(a) A discharge under § 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or *actual fraud . . .* " (emphasis supplied).

According to *House Report No. 95–595, 95th Cong. 1st Sess. (1977) at 363*, U.S.Code Cong. & Admin.News 1978, p. 5787, "actual fraud" is an additional ground for exception to the dischargeability of a specific debt. In addition, this Court is satisfied that no substantive change under the Bankruptcy Code has affected the requirement that the requisite intent to defraud is a positive fraud, i. e. a fraud which involved moral turpitude or intentional wrong. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1979); *In re Dolnick*, 374 F.Supp. 84 (N.D.Ill.1974); *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975). Furthermore, fraud is never presumed and in order to establish it there must be an especially strong showing. *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1887).

With respect to the second claim of nondischargeability, § 523(a)(2)(B) of the Bankruptcy Code provides in pertinent part as follows:

"(a) A discharge under § 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false; (ii) respecting the debtor's . . . . financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit *reasonably relied* (emphasis supplied); and (iv) that the debtor caused to be made or published with the intent to deceive;"

According to *House Report No. 95–595, 95th Cong. 1st Sess. (1977) at 364*, U.S.Code Cong. & Admin.News 1978, p. 6320, this Section provides "the creditor must not only have relied on a false statement in writing, the reliance must have been reasonable. This *codifies case law construing this provision.*" (emphasis supplied). Thus, although reasonable reliance is actually not a new requirement, it is a legislative recognition or reaffirmation of what has been established by the courts under pre-Code law.

These Sections of the Code, derived from the pre-Code law, have no specific provisions allocating the burden of proof in a contested discharge proceeding; thus, Bankruptcy Rule 407 is still controlling and applicable. Bankruptcy Rule 407 provides that the plaintiff on a complaint objecting to dischargeability of a particular debt has the burden to establish with the requisite degree of proof, each and every element of its claim. If the evidence presented by the plaintiff is in equilibrium then it has failed to carry its burden.

Thus, in order for the Bank to prevail on its complaint to determine dischargeability with respect to the alleged false financial statement of the Debtors, it must establish (1) that the Debtors submitted a false financial statement in writing; (2) that the statement was submitted with the specific intent to defraud; (3) that the Bank *reasonably* relied on the financial statement; and (4) in reliance with the financial statement, parted with money or property.

The difficulty with the Bank's claim based on actual fraud or false pretense concerning Mr. Curry is quite evident when one considers the undeniable fact that Mr. Curry never dealt with the Bank; did not instruct his wife to seek the loan and only learned about the loan after the loan was granted. These undisputed facts completely belie that Mr. Curry intended to

defraud the Bank, therefore, the claim of non-dischargeability charged against him based on § 523(A), cannot be sustained.

■ Concerning the claim of non-dischargeability based on the false financial statement, the conclusion must be the same in light of the undisputed facts that he had nothing to do with the preparation of the loan application and did not sign the loan application.

■ Concerning the claim of non-dischargeability with regard to Mrs. Curry, the difficulty with the Bank's claim is that there is a serious doubt whether or not she did obtain any money from the Bank. The loan application in evidence indicates that the borrower was Mr. Curry. The undisputed evidence is that the name of Mrs. Curry was stricken by the officer of the Bank and the Bank officer considered Mr. Curry the sole borrower although, of course, he insisted that the note be signed by both. Thus, in viewing the evidence even in the most favorable light, the most that can be said that is in equal balance on this point. This being the case, it is clear that the claim of non-dischargeability against either Mr. or Mrs. Curry cannot be sustained because the burden is placed on the Bank who must establish with persuasive evidence all elements necessary to remove a debt from the overall protective provisions of the bankruptcy discharge. *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975).

A separate final judgment will be entered in accordance with the foregoing.