**In re Philip SHELTON and Patsy Shelton, Debtors.**

**Philip SHELTON and Patsy Shelton, Plaintiffs,**

v.

**Charles WELLS and Glenda Marcella Wells, Defendants.**

Bankruptcy No. 81–00263(SE).
Adv. No. 81–0148(SE).

United States Bankruptcy Court,
E.D. Missouri, E.D.

March 8, 1983.

William H. Frye, Cape Girardeau, Mo., for debtors-plaintiffs.

William L. Syler, Cape Girardeau, Mo., for defendants.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

In a case pending under the Bankruptcy Code[1] Debtors (as Plaintiffs) filed a Complaint To Avoid Judgment Lien, seeking to

avoid the lien of a judgment obtained against them, by the Defendants, on April 21, 1981, in the Circuit Court of Dunklin County, Missouri, in Cause CV18–313CC. Judgment for $23,950.00 plus costs, was entered upon Count II of a two-count Petition filed July 1, 1980. Each of the two counts was predicated upon fraud: Count I prayed for the rescission of the allegedly tainted transaction (a real estate trade, or exchange); Count II prayed for money damages on account of the alleged fraud.[2]

In their Complaint, Debtors claim the lien of the judgment impairs an exemption in their homestead property, situated in Malden, Dunklin County, MO, and thus is avoidable under 11 U.S.C. § 522(f)(1). The homestead property is claimed as exempt in Debtors' Schedule B–4, with a value ascribed to it of "no equity".[3]

By reason of other exemptions specifically claimed in their Schedule B–4, Debtors have $15,690 available in exemptions claimable in said homestead real estate were there such an equity in the real estate. Despite the fact that Debtors do not have any equity in the real estate, the judgment lien *is* avoidable, to the extent of the exemptions claimable, under 11 U.S.C. § 522(f)(1), *In re Dewyer* (Bkrtcy., Pa.1980) 11 B.R. 551; *In re Farley* (Bkrtcy., Tenn., 1982) 19 B.R. 868; contra, *In re Boteler* (Bkrtcy., Ala., 1980) 6 B.C.D. 798, 5 B.R. 408, even though the debt underlying the judgment may be nondischargeable. *In re Haupt* (Bkrtcy., Pa., 1981) 16 B.R. 118; *In re Krajci* (Bkrtcy.Pa., 1980) 6 B.C.D. 1322, 7 B.R. 242; *In re Gantt* (Bkrtcy.Ala., 1980) 6 B.C.D. 798, 7 B.R. 13.

The judgment lien is voidable only to the extent of $15,690, and is avoidable only as to the homestead real estate.[4] An appropri-

1. Debtors' voluntary petition was filed on September 15, 1981.

2. The rescission count was dismissed by Defendants, for reason(s) not described in the record sub judice, upon the entry of the judgment on the money-damage count.

3. In their Schedule A–2, Debtors value the homestead property at $70,000, and describe it as subject to each of two deed of trust encum-

brances, which secure debts totaling $117,-734.10.

Defendants do not testamentarily dispute these valuation and secured debts descriptions.

4. Five (5) other parcels of real estate are scheduled by Debtors in their Schedule B–1; and perhaps as many as 11 parcels (in addition to the homestead real estate) are described in Debtors' Schedule A–2. An exemption is claimed, in Schedule B–4, as to the homestead

ate judgment is being entered upon the Complaint.

To the Complaint, Defendants filed an Amended Counterclaim, in two counts, Count I requesting a nondischargeability determination of the indebtedness underlying the judgment, and Count II objecting to Debtors' bankruptcy discharge under 11 U.S.C. § 727(a)(3) [books and records].[5]

In Count I of the Amended Counterclaim, Defendants allege that Debtors knowingly practiced a fraud upon them, with the intent to defraud them, a fraud upon which they relied to their damage. This Count I describes, except for some greater factual elaboration, the same fraud alleged to have been practiced upon the Defendants as the fraud alleged to have been practiced upon them in the Circuit Court cause.

The fraud complained of occurred in respect of an agreement negotiated by Mr. Shelton (Debtor), and Mr. Wells (Defendant), and entered into orally in December, 1978, to exchange parcels of real estate, the agreement having been consummated thereafter by an exchange of deeds executed by them and their spouses. By the agreement, Debtors were to trade two parcels of tenant real estate, situated in Malden, MO, and having values of $10,000, and $11,000, respectively, to the Defendants, for a parcel of residential property, owned by the Defendants, also situated in Malden, MO, having an equity (over one secured debt) of between $20,000 and $25,000. Defendants claim that the Debtors' two parcels were fraudulently represented by Mr. Shelton to be unencumbered and to be producing rents of $225 to $235 a month. In fact, each of the two parcels *was encumbered,* and had, if any equity at all, no more than $1,000 in equity.

Debtors deny that representations were made that the two tenant parcels were unencumbered. Mr. Shelton testified that he told Mr. Wells of the encumbrances, took him to the Malden State Bank, the encumbrancer, where he also was told of the encumbrances; that it was his (Shelton's) intention to sell the residential property (transferred by the Defendants) to a buyer with whom he had a contract to sell, realize the equity, and pay off the secured debts against the tenant properties; and that Mr. Wells knew of such intention.[6] Mr. Shelton further testified that his intentions were frustrated by (1) an increase in purchase-money interest rates (from 10% to 12%), and (2) a freeze on real estate loans at the time.[7] Mr. Wells, on the other hand, gave testimony in support of the fraud allegations, contradicting Mr. Shelton in almost all of the substantive aspects of the fraud alleged.

Each agreed, however, that Mrs. Shelton (Debtor) did not participate in the negotiations for the transfer, and did not actively represent that the two parcels were not encumbered. She did, however, execute each of the deeds by which she and her husband transferred each of the two parcels to the Wells, and she is a grantee, with her husband, in the Wells' deed of their residential property.

■ Aside from the obvious credibility issue which may otherwise be involved, this cause presents the issue whether the doctrine of collateral estoppel applies to preclude a consideration, on the merits, of the

real estate only. Each of the parcels described in B–1, and in A–2, is alleged not to have any equity.

5. Evidence was *not* adduced at the trial which would, in my judgment, warrant a denial of discharge, and Debtors' motion, orally made at the close of Defendants' case for judgment on Count II, was sustained. The formal judgment being entered today on the Counterclaim will so dispose of Count II, and further mention thereof will not be made in this Opinion.

6. Mr. Shelton was a licensed real estate broker at all times mentioned herein.

7. This evidence was elicited during the trial upon the issues raised by the Amended Counterclaim in this Adversary Cause. Evidence was not elicited in the Circuit Court cause.

Debtors' factual contention that fraud was not practiced upon the Defendants.[8]

As stated earlier, the Defendants' judgment is a consent judgment. It was entered upon a fraud damage count, which pleaded specifically most of the elements of a fraud claim under Missouri law. See *Empire Gas Corporation v. Small's LP Gas Company* (Mo.App., 1982) 637 S.W.2d 239 for a statement of those elements. And, the elements not specifically pleaded (knowing falsity, made with intent to deceive) are reasonably inferrable from the other elements specifically pleaded. See *Kearns v. Sparks* (Mo.App., 1953) 260 S.W.2d 353, 358. Moreover, the Missouri elements are identical to the elements necessary to make a nondischargeability fraud case under 11 U.S.C. § 523(a)(2)(A).[9]

Research does not disclose that the 8th Circuit Court of Appeals has spoken to the issue. However, in *In re Nadler* (E.D.Mo., 1976) 424 F.Supp. 1106, Chief Judge Wangelin applied the doctrine in similar circumstances, where a consent judgment was entered in pre-bankruptcy litigation upon a fraud count which alleged fraud with particularity, and where, in a dischargeability case, the debtor contended that the consent judgment evidenced only the debt, but did not admit any fraudulent wrongdoing. To this, Chief Judge Wangelin said (loc cit 1107, 1108):

"The Bankruptcy Court pointed out the repeated instances in which the plaintiffs to the civil action pleaded fraudulent acts and representations by the Nadlers which were made the basis of the consent judgment signed in 1973. This Court agrees with the conclusion of the Bankruptcy Court and finds this agreement to be the equivalent of an admission of the Nadlers. As stated in *A.D. Julliard Co. v. Johnson,* 166 F.Supp. 577, 585 (S.D.N.Y.

1957) aff'd 259 F.2d 837 (2 Cir., 1958) cert. den. 359 U.S. U.S.C. 942, 79 S.Ct. 723, 3 L.Ed. 676 (1959), cited by the bankrupts,

'a statement by a party that he consents to a decree is equivalent to an admission that the facts exist on which the decree rests...'"

Later, loc cit 1108, Judge Wangelin continues:

"The record taken in the bankruptcy proceeding satisfies this Court that the consent judgment agreed to by the parties in 1973 was based upon fraud under both Federal and State law."

Perhaps a more restrictive view, than *Nadler,* of the application of the doctrine would limit its application to a case where the record clearly indicates that the parties to the consent judgment intended to determine with finality the issues presented in the cause in which the consent judgment was entered. Debtors put this question of intention in issue, here, as well; as, Mr. Shelton testified that he and Mr. Wells negotiated the judgment, and that he (Shelton) agreed to the judgment only because he felt he owed the Wells money as a result of the real estate trade, and not because he believed he practiced any fraud upon them.

Notwithstanding this testimony—which I do not find credible under the circumstances—I believe the doctrine is applicable here, even under the more restrictive view. Here, each of the two counts of the Circuit Court cause is predicated upon the same alleged-to-be fraudulent scheme; each party to the cause was represented by counsel; each attorney was present at the time the parties' consent to judgment was presented to the Circuit Court and the judgment was entered. Further, at that time, the rescission count, by which the Wells could have been made whole, was affirmatively dis-

---

The judgment upon Count II, in that cause, was a consent judgment.

**8.** Whether the doctrine applies in a dischargeability context is a matter as to which bankruptcy courts are wrestling. See *Spilman v. Harley* (6 Cir., 1981) 656 F.2d 224, for an excellent dissertation and an extensive review of the reported cases.

**9.** Count I of the Amended Counterclaim, filed in the cause sub judice, complains of the same fraud described in the Circuit Court cause; only a more detailed factual elaboration of the fraud, in the Amended Counterclaim, distinguishes it from the pleadings of Count II in the Circuit Court cause.

missed. Under these circumstances, Debtors are to be deemed to have intended to settle the fraud issues raised by the Circuit Court petition.

.       .       .       .

Collateral estoppel aside, upon the disputed testimony, the credibility issues are being resolved in favor of the Defendants. The conflicts in the testimony will not be dwelled upon, here, anymore than those conflicts have been referred to earlier, as the conflicts are not of precedential value.[10] Further, the facts of the case are not in dispute, except for the contested issue whether fraudulent representations were made by Mr. Shelton.

■ Even so, leaving collateral estoppel aside, other issues are presented: are Defendants lawfully justified in relying upon Mr. Shelton's fraudulent representation, that the two tenant parcels were not encumbered, when a check of the land records would have revealed the encumbrances? Missouri courts have held, in a series of cases, that the defrauded party *may* reasonably rely upon such a representation and is not required to examine the land records to verify, or put the lie to, such a representation. *Buzby v. Cory* (Mo.App., 1930) 30 S.W.2d 171, cert. quashed (Mo.Sup., 1931) 43 S.W.2d 1050; *Nixon v. Franklin* (Mo.Sup., 1956) 289 S.W.2d 82; see, also, *Osterberger v. Hites Const. Co.* (Mo.App., 1980) 599 S.W.2d 221; *Dettler v. Santa Cruz* (Mo. App., 1966) 403 S.W.2d 651; *Wright v. Weaver* (Mo.App., 1950) 231 S.W.2d 857; *Klika v. Albert Wenzlick Real Estate Co.* (Mo.App., 1941), 150 S.W.2d 18.

■ Is Mrs. Shelton bound by the fraudulent representations of her husband, where, as here, the evidence does *not* show that she actively participated in the misrepresentations? In the circumstances of this case, where she participated in the trade transaction, by executing the deeds by which the encumbered tenant property was transferred to the Defendants, and where she is a grantee, with her husband, in the

Wells deed, so that she profited from the unequal trade, she is to be held liable for the damages caused by the fraud of her husband. *Falbert Tool & Engineering Co. v. McClain* (Mo.App.1979) 579 S.W.2d 751, 756; *Kearns v. Sparks,* supra (260 S.W.2d 353, 360). In each of these cases, a wife, who was not an active participant in the fraud, was held liable for the damages caused by the fraud of her husband, where each stood to benefit by it. In each case, the result is based upon the theory that a joint venture between the husband and wife existed, even though a formal partnership relationship, or formal principal-agent relationship, was not established by the evidence. The emphasis, in each case, was placed upon the fact of the benefit (of the consequences of the fraud) to both. The Rule of these cases has been applied by me in a dischargeability setting in *In re Charles Dorman Payne,* No. 78–01114, in an unreported decision filed January 18, 1980, where electrical service to the family's residence was procured pursuant to a deceitful scheme perpetrated by bankrupt's wife. I firmly believe that the application of the rule, in a dischargeability setting, is particularly appropriate here in Missouri, where title to property is frequently taken in joint names of both spouses, to insulate that property from creditors who hold or who otherwise would hold a claim against one spouse (the participating spouse) only, even where the tainted transaction by which the property so acquired is not actively engaged in by one of the spouses.

Accordingly, upon Count I of the Amended Counterclaim, judgment is being entered, this date, for the Defendants, that the judgment debt is nondischargeable. (Its enforcement is to be restricted only by the entry of the judgment, in Debtors' favor, on their Complaint.)

---

**10.** Mr. Shelton's testimony is not convincing: his payment of a year's rent in advance (of rent expected to be received from the two tenant parcels), to Wells convinces me that he intended, by the payment, to impress upon Wells the desirability of the trade, and the justification for Wells' trust and confidence in him.