In re Richard G. PAOLINO and Elaine M. Paolino, Debtors.

John F. FLUEHR, Jr., Richard J. Fluehr and Mary Lou Fluehr, his wife, and Theodore Fluehr and Joyce M. Fluehr, his wife, Plaintiffs,

v.

Richard G. PAOLINO and Elaine M. Paolino, Defendants.

Bankruptcy No. 85–00759G.
Adv. No. 86–0063G.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 2, 1987.
Opinion filed July 10, 1987.

William M. Shields, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for plaintiffs, John F. Fluehr, Jr., Richard J. Fluehr and Mary Lou Fluehr, his wife, and Theodore Fluehr and Joyce M. Fluehr, his wife.

Jonathan H. Ganz, Pincus, Verlin, Hahn & Reich, P.C., Philadelphia, Pa., for the debtor/defendant, Richard G. Paolino.

Jeffrey Meyers, Charleston & Fenerty, Philadelphia, Pa., for wife/debtor/defendant, Elaine M. Paolino.

Michael H. Reed, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for the trustee, Herbert Brener.

## ORDER

AND NOW, this 2 day of July, 1987, upon consideration of Elaine M. Paolino's motion for summary judgment, the response thereto and the parties' memoranda of law, it is ORDERED that the motion is DENIED. Opinion to follow.

## OPINION

BRUCE FOX, Bankruptcy Judge:

This motion for summary judgment arises in an action to determine the dischargeability of a debt. The plaintiffs are John F. Fluehr, Jr., Richard J. Fluehr, Mary Lou Fluehr, Theodore Fluehr and Joyce M. Fluehr; the defendants are the debtors, Dr. Richard G. Paolino and his wife, Elaine M. Paolino ("Mrs. Paolino"). This adversary proceeding is an unfortunate byproduct of the debtors' acquisition of a property in Bucks County, PA, known as the William Tennent Middle School ("the school property") and the plaintiffs' participation in the transaction as guarantors.[1]

Trial of this matter is scheduled for July 15, 1987. On July 2, 1987, I entered an order denying Mrs. Paolino's motion for summary judgment. In this opinion, I explain the basis for the denial of the motion.[2]

### I.

In their complaint, the plaintiffs make the following allegations.

The plaintiffs are the owners and operators of two funeral homes, one located in Philadelphia, and the other located in Bucks County. In the latter part of 1981, Dr. Paolino advised one of the plaintiffs that he was planning on purchasing the school property for the purpose of developing a life care facility that would be known as Brookhaven Estates. Over the next eight or nine months, there were several meetings between Dr. Paolino and one or more of the plaintiffs. Various other persons also attended these meetings.

As a result of these meetings, the plaintiffs provided Dr. Paolino with financial assistance in the Brookhaven endeavor. They executed a note and guarantees in favor of Univest Mortgage Co. ("Univest") in the amount of $1,750,000.00 in connection with the transaction; that indebtedness was secured by mortgages on more than twenty parcels of real estate owned by the plaintiffs. They also pledged certificates of deposit in the amount of $130,-000.00 as collateral for a loan issued by Continental Bank ("Continental"). In return for this assistance, the plaintiffs were to receive certain payments to be made on a monthly basis over a ten year period. The terms of the Fluehr-Paolino relationship were memorialized in a written agreement dated September 13, 1982.

The plaintiffs further allege that Dr. Paolino made various misrepresentations which induced them to provide financial backing to the project. They assert that Dr. Paolino represented that: (1) he already owned the school property at the time the plaintiffs executed the guarantee and mortgage documents; (2) the financing guarantees were needed for construction of the project; (3) he had a commitment for a construction loan and permanent financing for the project; and (4) that in the event of a default on the Univest obligation, the plaintiffs' funeral home would not be subject to Univest's claims and only the real property would be exposed to liability. In

---

1. This chapter 11 case was initiated by the filing of an involuntary bankruptcy petition. *See In re Paolino,* 49 B.R. 834 (Bankr.E.D.Pa.1985). Subsequently, this court appointed a trustee despite the debtors' objection. In its opinion accompanying the appointment of the trustee, the court briefly discussed the debtors' purchase of the William Tennent Middle School property and the role it played in the financial and legal difficulties leading to the debtors' involuntary bankruptcy. *See In re Paolino,* 53 B.R. 399, 400 (Bankr.E.D.Pa.1985), *aff'd,* 60 B.R. 828 (Bankr. E.D.Pa.1986).

2. The complaint raises claims under section 523(a)(2)(A) and (a)(6) of the Bankruptcy Code. In filing her motion for summary judgment, Mrs. Paolino's obvious intent was to obtain the dismissal of the entire proceeding as to her. However, neither her motion nor her supporting memorandum of law addresses her potential liability under section 523(a)(6). Since her motion has been denied with respect to section 523(a)(2), I find it unnecessary to decide or discuss any issues relating to subsection (a)(6). *See generally In re Kay,* 60 B.R. 174 (Bankr.C.D. Cal.1986).

fact, according to the plaintiffs, the Paolinos were not the owners of the subject property; the loans were needed to purchase the property, not for construction of the project; the Paolinos had no permanent financing commitments; and all of the plaintiffs' property is subject to Univest's claim. The plaintiffs claim that after the Paolinos defaulted on their obligations to Continental and Univest, Continental proceeded against the certificates of deposit and Univest confessed judgment against the plaintiffs on notes totalling almost $2,000,000.00. As a result, the plaintiffs allege that their credit has been impaired, all of their real estate holdings, including their funeral homes, have been encumbered by the Univest mortgage and they have expended $50,000.00 in legal fees in resisting Univest's collection efforts.

The plaintiffs concede that Mrs. Paolino did not personally make any representations to them or, in fact, ever communicate with them. They also concede that they cannot establish that Mrs. Paolino discussed with her husband or had any knowledge of any of the representations he made to the plaintiffs. Their legal theory for requesting a determination that her obligation to them is nondischargeable is that Dr. Paolino was acting as Mrs. Paolino's agent in the transaction and that his fraud may be imputed to Mrs. Paolino under 11 U.S.C. § 523(a)(2)(A).

In her motion for summary judgment, Mrs. Paolino makes two arguments. She asserts that the record establishes that Dr. Paolino was not acting as her agent with respect to the Brookhaven project. She also argues that even if he were her agent, as a matter of law, his fraud may not be imputed to her.

## II.

Fed.R.Civ.P. 56, which is incorporated by Bankr.Rule 7056, provides that summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. As the Third Circuit Court of Appeals recently reiterated, the motion "may be granted only if, as a matter of law, viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor." *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *accord, Goodman v. Mead Johnson and Co.*, 534 F.2d 566 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *In re H & H Beverage Distributors, Inc.*, 65 B.R. 243 (Bankr.E.D.Pa.1986). In passing on a summary judgment motion, the court may consider the pleadings, depositions, answers to interrogatories, admissions and affidavits submitted by or on behalf of the parties. Fed.R.Civ.P. 56.

In this case, Mrs. Paolino contends that the debt cannot be held nondischargeable as to her because her husband was not acting as her agent and, as it is conceded, she had no personal communication with the plaintiffs. In support of her motion, Mrs. Paolino submitted a copy of her pretrial deposition. The plaintiffs submitted no evidentiary material in opposition. *See* Fed.R.Civ.P. 56(e) (after summary judgment motion is made and supported by competent evidence, opposing party may not rest on his pleadings but must set forth specific facts showing that there is a genuine issue of fact). After considering Mrs. Paolino's deposition testimony, I conclude that there is a disputed issue of fact which precludes a determination on the agency issue.

In an earlier opinion in an unrelated proceeding in this bankruptcy case, I summarized the legal precepts which must be applied to determine whether Dr. Paolino was acting as his wife's agent:

Under Pennsylvania law, there is no automatic, general agency arising from the marital relationship. However, there is a presumption with respect to entireties property that either spouse has the power to act for both without any specific authority, so long as the acting spouse's action benefits both. This presumption, with respect to entireties property, does not require knowledge on the part of the other spouse. The presumption can be rebutted by evidence that the acting spouse was not authorized to act for

both. *See J.R. Christ Construction Co.*, 426 Pa. 343, 232 A.2d 196 (1967); *Bradney v. Sakelson*, 325 Pa.Super. 519, 473 A.2d 189 (1984).

*In re Paolino*, 72 B.R. 323, 328 (Bankr.E. D.Pa.1987), *aff'd*, —— B.R. ——, C.A. No. 87–2794 (E.D.Pa., June 25, 1987).[3]

■ The plaintiffs, relying on the foregoing presumption under Pennsylvania law, request that I make a finding that Dr. Paolino was acting as Mrs. Paolino's agent in this matter, even though they had no communication with her. *Cf. Viger v. Comercial Insurance Co.*, 707 F.2d 769 (3d Cir.1983) (summary judgment may be rendered in favor of nonmoving party). Certainly, there is evidence in the record which can support such a conclusion. The debtors acquired the school property as tenants by the entireties. They also purchased more than ten other investment properties jointly. Mrs. Paolino stated in her deposition that her husband handled all matters relating to the various investment properties, such as negotiating leases, collecting rents, paying taxes and effecting repairs. With respect to the school property, specifically, she relied on Dr. Paolino to make all of the arrangements for its acquisition. She did not independently review any of the documents at settlement; rather, she signed them because her husband signed them.

In short, if a presumption of agency is applicable in this case, Mrs. Paolino did not rebut the presumption in her deposition testimony. To the contrary, her testimony tended to confirm the existence of an agency relationship. Therefore, at a minimum, Mrs. Paolino has not established that, viewing the evidence most favorably toward the plaintiffs, she is entitled to the conclusion that her husband did not act as her agent, as a matter of law. Thus, her motion on the point must be denied.

■ Despite the plaintiffs' request for a finding in their favor on the agency question, it is unnecessary and inappropriate to reach the issue. Even if Dr. Paolino were acting as Mrs. Paolino's agent, the plaintiffs must still establish at trial the other facts necessary for a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A). Were I to rule on the agency issue, summary judgment could not be issued in favor of the plaintiffs. Moreover, there are unresolved factual issues which may affect my determination concerning the presumption of agency.[4] Therefore, it is more appropriate to let this entire matter be resolved by trial on the merits.

### III.

The legal issue which is ripe for resolution by summary judgment is whether Dr. Paolino's alleged fraudulent conduct may be imputed to Mrs. Paolino under 11 U.S.C.

3. In the case cited in the text, I found that Dr. Paolino acted as Mrs. Paolino's agent throughout the foreclosure proceedings instituted in 1984 by Home Unity Savings and Loan Association against the debtors' residence. I also found that Dr. Paolino had authority to act as his wife's agent in the involuntary chapter 11 proceedings that were commenced in March 1985. In their memorandum of law, the plaintiffs request that I consider those facts in determining whether Dr. Paolino was Mrs. Paolino's agent in the transaction which is the subject of this adversary proceeding. For the reasons set forth in still another reported decision in this bankruptcy case, I decline to do so. *See In re Paolino*, 72 B.R. 555, 557 n. 5 (Bankr.E.D.Pa.1987) (evidence admitted in one contested matter but not moved into evidence in a second contested matter in the same bankruptcy case will not be considered in deciding the second matter).

4. The agreement of sale for the purchase of the school property does not contain Mrs. Paolino's name or signature. The agreement is between the Centennial Joint School Board and Richard G. Paolino, his nominee or assignee. Nor was Mrs. Paolino a party to the September 13, 1982 written agreement between Dr. Paolino and the plaintiffs memorializing the terms on which the plaintiffs agreed to back the Brookhaven project. It is not possible to determine from the current record whether, at the time Dr. Paolino was negotiating with the plaintiffs, he and his wife intended to take title to the school property jointly. That fact may be relevant in determining whether the presumption of agency for entireties property is applicable in this case. The plaintiffs implicitly request that I infer that the acquisition and development of the school property was at all times intended by the Paolinos to be a joint project. In light of the debtors' course of conduct with respect to their other investments, the inference is a plausible one. However, it is inappropriate to make such an inference by way of summary judgment.

§ 523(a)(2)(A).[5] With respect to this issue, Mrs. Paolino assumes *arguendo* that the plaintiffs will be able to establish their claims against Dr. Paolino at trial and also that he will be found to be acting as her agent. Mrs. Paolino then contends that since she personally engaged in no misconduct as to the plaintiffs, her obligation to them should not be found nondischargeable based on what amounts to vicarious liability.[6] There is some significant caselaw and policy support for her position. However, under the principles of statutory construction enunciated by the Supreme Court in *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), I am constrained to hold that Dr. Paolino's conduct, if he is found to be acting as agent for his wife, may be imputed to her under 11 U.S.C. § 523(a)(2)(A).

■ Section 523(a)(2)(A) is designed to render nondischargeable debts arising from conduct involving "moral turpitude or intentional wrong." *In re Gelfand*, 47 B.R. 876, 879 (Bankr.E.D.Pa.1985); *accord, Neal v. Clark*, 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1877).[7] As an exception to discharge, it is narrowly construed against the creditor and in favor of the debtor. *E.g., In re Gelfand; In re Emery*, 52 B.R. 68

(Bankr.E.D.Pa.1985). In order to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must prove that: (1) the debtor made a materially false representation; (2) the representation was made with intent to deceive; (3) the creditor justifiably relied on the representation; and (4) the creditor sustained proximate damage as a result of the representation. *In re Gelfand*, 47 B.R. at 879; *accord, In re Woods*, 66 B.R. 984 (Bankr.E.D.Pa.1986). The burden of proof is on the creditor, which must establish its case by clear and convincing evidence. *In re Fitzgerald*, 73 B.R. 923 (Bankr.E.D.Pa., 1987); *In re Woods; In re Woerner*, 66 B.R. 964 (Bankr.E.D.Pa.1986); *In re Emery*.

■ Section 523(a)(2) is derived from section 17a(2) of the former Bankruptcy Act, 11 U.S.C. § 35 (repealed 1978). The legislative history notes that section 523(a)(2) was modified "only slightly" from former section 17a(2). Several of the changes involved the false financial statement provision, which is now subsection (a)(2)(B) of section 523. The only change from the Act made in current subsection (a)(2)(A) was the addition of "actual fraud" as a ground for exception from discharge. S.Rep. No. 95–989, 95th Cong., 2d Sess. 78 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977) U.S.Code Cong. & Admin.News

---

5. Section 523(a) provides that an individual debtor is not discharged from any debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financing condition. . . .

6. Under Pennsylvania law, a principal is liable to third parties for frauds and torts of his agent committed within the scope of the agency even if the principal did not authorize, justify, participate or know of the agent's actions. *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 499 A.2d 282 (1985). The Pennsylvania Supreme Court has explained:

This rule of liability is not based upon any presumed authority in the agent to do the acts, but on the ground of public policy, that it is more reasonable that when one of two innocent persons must suffer from the wrongful act of a third person, that the principal who has placed the agent in the position of

trust and confidence should suffer rather than an innocent stranger. . . .

This result can be reached similarly on the familiar ground that when an agent exceeds his authority, his principal cannot benefit of his act and at the same time repudiate his authority. He must take the benefit to be derived from the transaction subject to his agent's fraud.

508 Pa. at 559, 499 A.2d at 885–86 (citations omitted). The policy decision made by the Pennsylvania Supreme Court is not conclusive on the issue before me as the question of nondischargeability is one of federal law which has its own policy concerns, (*e.g.*, a debtor's right to a "fresh start"). *See, e.g., Matter of Pappas*, 661 F.2d 82 (7th Cir.1981) (construing section 17a(2) of the former Bankruptcy Act).

7. *Neal v. Clark* was decided under the Bankruptcy Act of 1867, which provided that "no debt created by the fraud or embezzlement of the bankrupt, or by defalcation as a public officer, or while acting in a fiduciary capacity, shall be discharged under this act." 95 U.S. at 706.

1978, pp. 5787, 5864, 6320. Collier observes that the addition of the phrase "actual fraud" probably made no change in the law because false pretenses and representations had been construed to mean acts involving moral turpitude or intentional wrong. 3 *Collier on Bankruptcy* ¶ 523.-08[5] (15th ed. 1987). This conclusion finds support in Congressional statements: "Subparagraph [ (a)(2)(A) ] is intended to codify current case law *e.g Neal v. Clark*, 95 U.S. [5 Otto] 704 [, 24 L.Ed. 586] (1887), which interprets 'fraud' to mean actual or positive fraud rather than fraud implied in law." 124 Cong.Rec. 3998 (1978) (statement of Sen. DeConcini); 124 Cong.Rec. 32998 (1978) (statement of Rep. Edwards). Given the derivation of the provision, it is therefore not surprising that courts have looked to pre-Code decisional law in construing section 523(a)(2)(A). *See In re Garver*, 26 B.R. 552 (Bankr.D.Vt.1983); *Matter of Buford*, 25 B.R. 477 (Bankr.S.D. N.Y.1982); *Matter of Newmark*, 20 B.R. 842 (Bankr.E.D.N.Y.1982); *Matter of Gessler*, 11 B.R. 489 (Bankr.W.D.Wisc.1981); *In re Miller*, 5 B.R. 424 (Bankr.W.D.La. 1980).

Under the former Bankruptcy Act, a debt obtained by false pretenses or false representations and a debt obtained through a false, written financial statement were both excepted from discharge by the same statutory provision, section 17a(2). A false financial statement, could also serve as a basis for a denial of a discharge in toto [8] pursuant to section 14c.

In a number of decisions under the Act, courts were asked to determine whether the misconduct of an agent would bar a discharge under section 14c or, alternatively, render a debt nondischargeable as to the debtor-principal under section 17a. A significant distinction developed between the two statutory provisions. One court concisely summarized the caselaw under the Act as follows:

> Most of the early cases under the Act focused on whether the statements of one partner may be imputed to the bankrupt partner to prevent that partner's discharge in bankruptcy. These cases generally distinguished between the bankrupt's *right* to a discharge and the *effect* of the discharge ... The courts did, however, usually in *dicta*, indicate that even though the bankrupt partner would be granted the discharge, the *effect* of the discharge may be such that the bankrupt would not be discharged from liability on the debt owed to the defrauded creditor.

*In re Anderson*, 29 B.R. 184, 190 (Bankr.N. D.Iowa 1983) (citations omitted) (emphasis in original).

Other courts have been less equivocal in their interpretation of the Act cases and the distinction between nondischargeability and denial of discharge. In *In re Walker*, 53 B.R. 174, 179 (Bankr.W.D.Mo.1985) ("*Walker II*") the court stated:

> [T]he fraud of an authorized agent, without more, has continually been recognized as a ground of nondischargeability, although it takes the knowledge or reckless disregard of the principal to deny the latter's discharge in bankruptcy.

*Accord, In re Kay*, 60 B.R. 174, 176 (Bankr.C.D.Cal.1986); *Matter of Gray*, 22 B.R. 676, 679–80 (Bankr.W.D.Wisc.1982); 1A *Collier* ¶ 17.16, at 1640.1 to 1641 & nn. 25–26 (14th ed.).

In *Matter of Gray*, 22 B.R. 676, 679 (Bankr.W.D.Wisc.1982), the court explained the rationale for the distinction drawn under the Act cases:

> First, the courts considered the different natures of a denial of discharge and nondischargeability of a debt. A denial of discharge was based on "criminal con-

---

**8.** In 1960, Congress amended the prior Act by limiting the use of a false financial statement as a bar to discharge. After 1960, the Act provided that a discharge could be barred only for debtors who gave false, written financial statements in the course of business dealings. 1A *Collier on Bankruptcy* ¶ 14.01, at 1256–57 (14th ed. 1978). In enacting the Bankruptcy Code, Congress eliminated altogether the false financial statement as a basis for a denial of discharge. *See* H.R.Rep. 95–595, 95th Cong., 1st Sess. 128–29 (1977) U.S.Code Cong. & Admin.News 1978, pp. 6089–90. However, other types of fraudulent conduct can still give rise to a denial of discharge. *See* 11 U.S.C. § 727(a)(2), (4).

duct or actual dishonesty quasi-criminal in nature." ... It is a harsh sanction which benefits all creditors, not just those which were harmed by the false statement.... [T]he courts felt justified in denying an innocent partner discharge of a debt, because he should not be allowed to repudiate the means by which he was benefited. The second reason for distinguishing between the two is based on the different language of the sections. The language in section 14c required the active involvement of the bankrupt. He must have made or published or caused to be made or published the false financial statement. Section 17a simply provides that debts which are liabilities for obtaining money or property by means of a false financial statement shall not be discharged.

*Id.* at 679–80 (citations omitted).

I do not propose to review here the various federal cases which discuss imputing the fraud of an agent to the principal under sections 14 and 17 of the Act; this was more than adequately done in the opinions in *Kay, Walker II, Anderson* and *Gray.* I do observe that state courts, too, recognized that fraud committed by an agent would render a debt nondischargeable as to a debtor-principal under section 17a(2) of the Act[9] and that my research reveals no cases with contrary holdings. *See* 1A *Collier* ¶ 17.16, at 1641 nn. 25–26 (14th ed.) (collection of cases). It is also significant that the Supreme Court addressed this precise issue under the Bankruptcy Act of 1867, *see* note 5, *supra,* and held a debt created by the fraud of one partner to be nondischargeable as to all members of the partnership. *Strang v. Bradner,* 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885). In short, my review of the pre-Code decisions convinces me that the distinction between denial of discharge and the dischargeability of a particular debt, in the context of imputing the fraud of an agent to a principal, was well established at the time of the enactment of the Bankruptcy Code.

Against this background, courts have divided on their interpretation of 11 U.S.C. § 523(a)(2). Some courts, without extensive discussion, have imputed the fraud of the agent to the principal under section 523(a)(2). *In re Beleau,* 35 B.R. 259 (Bankr.D.R.I.1983); *In re Lowther,* 32 B.R. 638 (Bankr.W.D.Okla.1983); *In re Shelton,* 28 B.R. 218 (Bankr.E.D.Mo.1983); *In re Newmark,* 20 B.R. at 857; *In re Pommerer,* 10 B.R. 935 (Bankr.D.Minn.1981). This result is supported by Collier. 3 *Collier* ¶ 523.08[ ], at 523–49 (15th ed.). Other courts, without discussing agency, have declined to impute the fraud of one spouse to the other spouse in the absence of evidence of the passive spouse's direct participation in the fraudulent scheme. *In re Klein,* 58 B.R. 397 (Bankr.E.D.Pa.1986) (evidence insufficient "to implicate" wife); *In re Norton,* 34 B.R. 666 (Bankr.D.Ariz.1983) (no evidence that wife "made" the misrepresentations); *Matter of Benedict,* 15 B.R. 671 (Bankr.W.D.Mo.1981) (no evidence "to implicate" wife); *Matter of Curry,* 12 B.R. 421 (Bankr.M.D.Fla.1981) (husband did not instruct wife to obtain loan and had no knowledge of loan application). *See also Matter of Curl,* 64 B.R. 14 (Bankr.W.D.Mo. 1986) (no evidence that husband acted as wife's agent); *Matter of Steinman,* 61 B.R. 368 (Bankr.W.D.Mo.1986) (evidence insufficient to establish that husband acted as wife's agent). Finally, a few courts have expressly rejected the doctrine that the fraud of an agent may be imputed to the principal under section 523(a)(2). Instead, borrowing from the principles developed under section 14c of the prior Act, these courts have held that the fraud will be imputed to the debtor-principal only when the principal either knew or should have known of the agent's fraud. *Matter of Walker,* 726 F.2d 452 (8th Cir.1984) ("*Walker I* "); *In re Futscher,* 58 B.R. 14 (Bankr.S.D.Ohio 1985); *In re Anderson.*

A cogent policy argument can be made in favor of limiting the use of vicarious liability principles under section 523(a)(2) in the manner set forth in *Walker I, Futscher*

---

**9.** Prior to 1970, state courts had concurrent jurisdiction to determine the dischargeability of a debt under section 17a(2); after 1970, the bankruptcy courts had exclusive jurisdiction. *See* 1A *Collier* ¶ 17.28A (14th ed.).

and *Anderson.* As the *Anderson* court stated:

> One of the primary purposes of the Bankruptcy [Code] is to relieve the honest debtor from the oppressive burden of his or her debts.... [T]he basis for the exceptions to discharge under section 523(a) is to protect the creditor from the dishonest and fraudulent debtor.... The clear legislative policy of discharging the honest debtor would be negated by imputing the deceptive intent of one partner to an honest, innocent debtor partner.

29 B.R. at 191 (citations omitted).

However, notwithstanding the interpretation of section 523(a)(2) exemplified by the *Walker I* line of cases, I am compelled to hold that the agent's fraud may be imputed to the principal under section 523(a)(2). In *Midlantic National Bank v. New Jersey Department of Environmental Protection,* a case involving section 554 of the Bankruptcy Code, the Supreme Court emphasized the rule of statutory construction which instructs that if Congress intends to alter a statutory interpretation of longstanding, it clearly expresses that intent. The court again applied that principle of statutory construction in a bankruptcy case last year, *Kelly v. Robinson,* — U.S. —, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). It is similarly applicable herein.

■ As explained above, section 17a(2) of the former Act was judicially construed to render nondischargeable debts created by the fraud of the agent of a principal-debtor. These holdings were uniform and longstanding. *See* 1A *Collier* ¶ 17.16 (14th ed.). I see nothing in the legislative history to suggest that Congress wished to alter that construction of the nondischargeability provision or even considered the issue when it enacted the Code. The closest references in the legislative history are the floor statements quoted earlier which ex-

plain that subparagraph (a)(2)(A) is intended to codify *Neal v. Clark* and to limit a finding of nondischargeability to those cases involving actual or positive fraud rather than fraud implied by law. The *Neal v. Clark* requirement of a finding of actual or positive fraud was not interpreted to preclude vicarious liability of a principal under section 17a(2) of the former Act. Indeed, such an interpretation was untenable after *Strang v. Bradner,* a case in which the Supreme Court both acknowledged the *Neal v. Clark* requirement of actual or positive fraud and held a debt nondischargeable as to debtor-principals based on the fraudulent conduct of their agent-partner.[10]

Were I writing on a clean slate, I might agree that the standards enunciated in *Walker I, Futscher* and *Anderson* are sensible and should be applied in construing section 523(a)(2). However, those decisions do not articulate a persuasive basis for disregarding binding pre-Code precedent. As the bankruptcy court in *Walker II* demonstrated on remand from *Walker I,* the Eighth Circuit, without explanation, relied exclusively on case authority under section 14c of the Act which involved denial of discharge, rather than cases decided under section 17a. *See Walker II,* 53 B.R. at 181. The court in *Futscher* made no reference at all to cases decided under section 17a of the prior Act. And, the court in *Anderson,* without reference to the legislative history which emphasizes section 523(a)(2)'s roots in section 17a(2), conclusorily distinguished the Act cases based on "the changes in the bankruptcy law put into effect by the Bankruptcy Reform Act of 1978 ... ." 29 B.R. at 184.

For these reasons, I hold that if the plaintiffs establish that Dr. Paolino was acting as Mrs. Paolino's agent in the subject transaction, any fraud by Dr. Paolino committed within the scope of the agency

---

**10.** I recognize that reliance on a one hundred year old Supreme Court decision such as *Strang v. Bradner* has its risks. *See Puerto Rico v. Branstad,* — U.S. —, 107 S.Ct. 2802, 97 L.Ed.2d 187 (1987), *overruling Kentucky v. Dennison,* 24 How. 66, 16 L.Ed. 717 (1861). However, here, the legislative history expressly states that Congress has approved the holding of *Neal v. Clark,* a case interpreted only eight years later in *Strang;* at the same time, the legislative history does not disapprove or even mention *Strang.* In these circumstances, *Strang* retains its vitality as precedent.

**650**

relationship may be imputed to Mrs. Paolino for purposes of 11 U.S.C. § 523(a)(2)(A). Therefore, I have denied Mrs. Paolino's motion for summary judgment and the case will proceed to trial.