In re George A. NORTON and Gayle D. Norton, husband and wife, dba G & N Fun Tours, Debtors.

BAND OF KNIGHTS BOOSTER CLUB, Plaintiff,

v.

George A. NORTON and Gayle D. Norton, dba G & N Fun Tours, Defendants.

Bankruptcy No. B–81–1596 PHX–GBN.

Adv. No. 81–850 GBN.

United States Bankruptcy Court, D. Arizona.

Nov. 29, 1983.

James B. Wyss, Wachtel, Biehn & Malm, Lake Havasu City, Ariz., for Band of Knights Booster Club.

Thornton W. Price III, Phoenix, Ariz., for debtors/defendants.

MEMORANDUM OPINION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This matter was heard at trial on Band of Knights Booster Club's adversary complaint to determine certain sums as nondischargeable liabilities of the debtors. 11 U.S.C. § 523(a).

Upon consideration of the pleadings, memorandums, exhibits and testimony pro-

duced, I will grant judgment against defendant George A. Norton in the sum of $7,100.00 plus interest and costs.

## STATEMENT OF FACTS

Plaintiff is a nonprofit, unincorporated association[1] of Mohave County, Arizona residents who support activities of the Band and musical program operated at the Lake Havasu City High School. At all times material, Mr. and Mrs. Norton operated a travel agency in that City, known as G & N Fun Tours.

During late 1979, plaintiff organized a campaign to generate funding to allow band members to travel to Great Britain for public performances. Plaintiff's Exhibit 11. The Nortons' services were retained to provide necessary transportation and lodging arrangements.

As the relationship continued, a ten thousand dollar payment was made to defendants by the Association. Sworn testimony by Association members Margaret Clark, Arthur Millin, Kathryn Millin and Laurence A. Clark was received that George A. Norton requested this ten thousand dollar payment as a deposit for aircraft seating on Laker Airways Limited. Additionally, the Club's check number 378, dated June 11, 1980, bears on its face the notation "deposit on airplane." Plaintiff's Exhibit 1. Likewise, the Club's contemporaneous executive minutes of June 4, 1980 reflect George A. Norton's report that a $10,000.00 deposit was needed to reserve seating on the Laker aircraft. Norton was to receive the check by the end of the week. Plaintiff's Exhibit 14 at 2.

Defendant Norton denies informing the Club the ten thousand dollar payment was requested as a deposit on aircraft seating. This testimony is impeached by his own notes, subtracting from the aircraft cost of $97,865.00 the sum of $10,000.00 as "deposit received 6–10–80." Defendants' Exhibits 5 and 6. This identical information is re-peated on defendant's own undated letterhead memorandum. Defendants' Exhibit 7.

Both defendants deny Norton represented the $10,000.00 was to go for a seating deposit and testified they were "surprised" at receiving a $10,000.00 check—although they made no inquiry to the Club concerning its receipt. I do not find this testimony credible.

It is undisputed that, in reality, Laker did not require a $10,000.00 deposit at that time. Nor is it disputed that of that amount, only $3,500.00 was sent to Laker for a deposit. Plaintiff's Exhibit 9. Defendants' Exhibit 8.

As the original departure date approached without significant progress in raising the necessary funds, George Norton requested, and was given, $600.00 for an additional seating deposit. Plaintiff's Exhibit 2. Mr. Norton testified this was due to plaintiff's increase in the number of requested seats. He admits, however, his request for more funding was to determine if plaintiffs "were serious" in view of the lack of progress in raising additional travel funds. There is no evidence the airline itself requested an additional $600.00 deposit at that time.

Norton testified the $600.00 was never sent in to Laker because by then it was time to pay in the complete aircraft bill.

Through no fault of the debtors, plaintiff was unable to raise the necessary additional funds and the trip was cancelled. Subsequently, in belief defendants had applied the $10,600.00 to Laker as a deposit, the Club appealed to the airline for a refund. Plaintiff's Exhibit 15. The airline responded it would refund the deposit in full but that only $3,500.00 had been received. Plaintiff's Exhibit 9. There is controversy over whether defendants were initially willing to make this refund. The airline letter enclosing the $3,500.00 check to debtors is dated February 25, 1981. Exhibit 9, *supra.*

---

1. I previously denied defendants' motion to dismiss for lack of legal capacity, finding (1) this is a suit to enforce a substantive right under federal law, Rule 17(b)(1), *F.R.Civ.P.,* and (2) defendants' prior dealings with plaintiff estops them from subsequently denying plaintiff's legal capacity.

Plaintiff received the $3,500.00 refund on March 3. George Norton explains his earlier telephonic refusals to pass the airline refund on to plaintiff were due to late delivery of the airline letter.

Plaintiff made no recovery of its $10,600.00 payments, other than the $3,500.00 refund. Mrs. Norton testified in the travel industry, compensation is derived from a discount given travel agencies by carriers. The client traveler is not charged a fee for the travel agent's services. Regardless, they considered the $10,600.00 as their property since they lost their commission due to plaintiff's inability to fund the trip.

## CONCLUSIONS OF LAW

The five elements required to prove that an obligation is non-dischargeable under Section 523(a)(2)(A) are as follows:

1. that the debtor made a representation;

2. that the debtor knew the representation was false when he made it;

3. that the debtor made the representation with intent to deceive the creditor;

4. that the creditor relied on the representation; and

5. that the creditor sustained damage as a proximate result of the false representation.

*In re Houtman,* 568 F.2d 651, 655 (9th Cir. 1978) (construing § 17(a)(2) of the old Act); *Matter of Nelson,* 561 F.2d 1342, 1346 (9th Cir.1977).

■ After observing the respective testimony and exhibits, I conclude George A. Norton was entrusted with $10,600.00 of plaintiff's money for the purpose of seat deposits when he had no intention of solely using the money for that purpose. Where debtor is entrusted with money to be used for a specific purpose, and has no apparent intention of using the money for that purpose, a misrepresentation clearly exists upon which a debt may be held nondischargeable. *Matter of Pappas,* 661 F.2d 82, 86 (7th Cir.1981) (Act case); *In re Wade,* 26 B.R. 477, 483 (Bkrtcy.N.D.Ill.1983) (Code case).

By so finding, I do not imply travel agents may not receive compensation for their efforts when a trip is cancelled. Rather, those dealing with such businesses are entitled not to be misled concerning the purposes for which their money is to be used.

■ At the close of trial, I *sua sponte* dismissed plaintiff's complaint as to Mrs. Norton. Nothing in the Club's post-trial memorandum mandates change of that decision. The difficulty with plaintiff's complaint against Mrs. Norton is that no evidence was presented indicating she made the deposit misrepresentations. Accordingly, fraud, which is never presumed, has not been shown. *Matter of Curry,* 12 B.R. 421, 424–25 (Bkrtcy.M.D.Fla.1981) (finding fraud as to wife, dismissing as to husband); *Matter of Benedict,* 15 B.R. 671, 675 (Bkrtcy.W.D.Mo.1981) (reverse).

Certainly fraud cannot be imputed to Mrs. Norton on the basis of Arizona community property law. *In re Bursh,* 14 B.R. 702, 706–06 (Bkrtcy.Ariz.1981).

Pursuant to Rule 7052, *F.R.Bk.,* this opinion constitutes my findings of facts and conclusions of law. Plaintiff should lodge and serve a judgment against George A. Norton consistent with this memorandum, specifically reflecting the judgment interest rate allowed by law and apply to the Clerk for costs. *See Taxation of Costs,* 37 F.R.D. 481, 485–94.