**In re William E. MALTAIS and Catherine Maltais, Debtors.**

**COLUMBIA FARMS DISTRIBUTION, INC., NATIVE FOODS DIVISION, Plaintiff,**

v.

**William E. MALTAIS and Catherine Maltais, Defendants.**

**Bankruptcy No. 94–40837–HJB. Adv. No. 95–4096.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 2, 1996.

Kevin C. McGee, Worcester, MA, for plaintiff.

Alfred Paul Farese, Jr., Everett, MA, for debtors.

Gary W. Cruickshank, Chapter 7 Trustee, Boston, MA.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion For Partial Summary Judgment on Counts I, II and III" (the "Motion") filed by Columbia Farms Distribution, Inc., Native Foods Division ("Columbia Farms" or the "Plaintiff") in this Adversary Proceeding. The Complaint contains a total of five counts. In its Counts I and II, Columbia Farms asks that the debt owed to it by William and Catherine Maltais (individually "Mr." or "Mrs. Maltais" or jointly the "Defendants") be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). In Counts III, IV, and V, Columbia Farms seeks denial of the Defendants' discharge under 11 U.S.C. § 727(a). The Defendants answered the Complaint, and subsequently, Columbia Farms filed the instant Motion. The Plaintiff requests summary judgment against both Defendants, pursuant to § 523(a)(6) (Count I); against Mr. Maltais, pursuant to § 523(a)(6) (Count II); and against Mr. Maltais, pursuant to § 727(a) (Count III). After a hearing on the Motion, the Court granted summary judgment against Mr. Maltais on the § 727(a) count (Count III), but denied summary judgment against Mr. Maltais on the § 523(a)(6) counts (Counts I and II)[1]. Further, the Court took under advisement the Plaintiff's request for summary judgment against Mrs. Maltais pursuant to § 523(a)(6).

### I.  FACTS

The relevant facts are without substantial controversy.[2]  Through early 1992, Mr. Mal-

---

1.  Because the Court's ruling on Count III against Mr. Maltais has now become a final order, the balance of the relief sought against Mr. Maltais under § 523(a)(6) and § 727(a) is moot.

2.  On July 2, 1996, Columbia Farms submitted a Motion for an Order Determining the Material Facts Without Substantial Controversy Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56(d), along with a proposed order.  The Defendants did not

tais managed a corporation by the name of Northeast Provision, Inc. ("Provision"), in the business of processing chicken. Although Mr. Maltais was in total control of the business operations of the company, Mrs. Maltais served as its president and treasurer, supposedly because her husband had previously filed a bankruptcy case and would have had difficulty obtaining credit.

Until early 1992, Provision's primary supplier of chickens was Prime Poultry Corporation ("Prime"). However, in the first quarter of 1992, Prime discontinued its business with Provision, prompting Mr. Maltais to negotiate with Columbia Farms as a potential substitute supplier of chicken. On the advice of its attorneys, Columbia Farms informed Mr. Maltais that it would not do business with Provision, but would sell poultry to the Defendants if they would establish a new company and grant Columbia Farms a security interest in that company's accounts receivable. In April 1992, Mrs. Maltais, "doing business as Northeast Poultry," signed such a security agreement with Columbia Farms. The Defendants subsequently formed Northeast Poultry, Inc. ("Poultry"), with Mrs. Maltais again as the president, treasurer, and sole shareholder of the corporation. In July 1992, Mrs. Maltais executed a security agreement granting Columbia Farms a security interest in Poultry's accounts receivable, and Mr. and Mrs. Maltais executed and delivered separate guaranties of Poultry's obligations to Columbia Farms. Both security agreements were prepared by Columbia Farms' attorneys.

As with Provision, Mrs. Maltais was only the figurehead of Poultry. Mr. Maltais would on occasion consult with Mrs. Maltais as to major business decisions, but Mr. Maltais ran the day-to-day affairs of the company. *See* Oct. 1996 Order, ¶ 9; *see also* Plaintiff's Memo. in Sup. of its Mot. for Partial Summ.J. at 12 ("Although William would on occasion inform [Catherine] of his actions taken in connection with the corporations under her name, she took little interest in his

file an objection or a response, and the Court allowed the motion and signed the proposed order with minor modification on October 7, 1996 ("Oct. 1996 Order").

actions or in the business affairs of the corporations."); Jan. 12, 1996, Dep. of William E. Maltais at 10–11 (when asked whether he discussed the formation of Poultry with Mrs. Maltais, Mr. Maltais answered: "In the sense that I told her that this is what we were doing"; he later stated that Mrs. Maltais "didn't have any feeling for what was going on, . . . but she trusted my decision at that time and went along with it."). However, Mrs. Maltais had check-signing authority for Poultry, and permitted Mr. Maltais and other employees of the company to use a signature stamp to sign checks drawn on the company's accounts. Mrs. Maltais received a weekly check in the amount of $1,500.00 from Poultry (and later from the companies that succeeded Poultry, *see* discussion *infra*) through October 1993.

Columbia Farms and Poultry continued in their business relationship until approximately July of 1993. However, as of July 9, 1993, the amount owed by Poultry to Columbia Farms had grown to approximately $1,365,-000.00. According to Columbia Farms, one of its employees then met with Mr. Maltais and demanded that the balance of the debt be reduced.

Among the other business entities controlled by Mr. Maltais was a New Hampshire corporation, Northeast Poultry Haulers ("Haulers"). Prior to July 1993, Mrs. Maltais had also served as the president and treasurer of Haulers. However, in July of 1993, Mr. Maltais replaced her in those positions. On July 8, 1993, all of the assets of Poultry, including its accounts receivable and the proceeds thereof, were transferred to Haulers, and Haulers changed its principal place of business from Salem, New Hampshire, to Poultry's facility in Salem, Massachusetts. Mr. Maltais then used collections from Poultry's accounts receivable to buy inventory in Haulers' name, transferred money from Poultry's bank accounts to Haulers, and dealt with Poultry's customers in the name of Haulers.[3]

3. As set forth in the October 1996 Order, Poultry had $47,440.15 in its corporate account as of July 6, 1993. From July 7, 1993, through July 23, 1993, a total of $528,310.35 was collected from accounts receivable. $348,805.89 was dis-

On July 20, 1993, Haulers filed a Chapter 11 petition in the United States Bankruptcy Court for the District of New Hampshire (the "New Hampshire Bankruptcy Court"). On July 21, 1993, Columbia Farms obtained an injunction from the Worcester Division of the Commonwealth of Massachusetts Superior Court Department of the Trial Court ("Massachusetts Superior Court"), prohibiting Poultry and both Defendants from transferring, selling, or otherwise dissipating any of the Plaintiff's collateral, and requiring that Poultry immediately deliver a current, complete, and accurate list of all accounts receivable collected in the past six weeks or uncollected as of that time. On December 15, 1993, Chief Judge Yacos of the New Hampshire Bankruptcy Court dismissed Haulers' Chapter 11 case for cause, finding that (1) the petition was filed in bad faith; (2) "the record and the pleadings indicate this case [was] no more than a 'plan for litigation' to resolve the claims between the Debtor and the two secured claimants, Prime Poultry and Native Foods[,] which is not within the intended purposes of Chapter 11"; and (3) it was unlikely that reorganization was achievable within a reasonable time under 11 U.S.C. § 1112(b)(2).

On December 23, 1993, Prime obtained an order from the Suffolk Division of the Massachusetts Superior Court (the "Suffolk Superior Court"), appointing a receiver for Provision, Poultry, and Mr. and Mrs. Maltais. Haulers thereupon transferred its business assets to a new corporation, Sunrise Farms, Inc. ("Sunrise"), formed by a friend of Mr. Maltais. On December 30, 1993, pursuant to

an *ex parte* motion by the receiver, the Suffolk Superior Court provisionally extended the receivership to Haulers and Sunrise, and authorized the receiver to operate Sunrise's business. The receivership was permanently so extended on January 31, 1994, after a three day evidentiary hearing.[4]

On February 28, 1994, the Defendants filed a joint petition under Chapter 7 of the Bankruptcy Code in this Court, and this adversary proceeding was initiated by Columbia Farm's filing of its Complaint on March 31, 1995.

## II. *DISCUSSION*

■ A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bank.P. 7056; Fed.R.Civ.P. 56(c); *Brzys v. Lubanski (In re Lubanski)*, 186 B.R. 160, 163–64 (Bankr.D.Mass.1995). To determine whether any genuine issues of material fact exist, the Court must examine the facts of this case in the context of § 523(a)(6). That section provides that "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity" is to be excepted from discharge. § 523(a)(6). "[T]he term 'willful and malicious' in § 523(a)(6) means an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty and that necessarily produces an injury." *Lubanski*, 186 B.R. at 165.

bursed to pay for Haulers' inventory and operating expenses and $220,779.39 was disbursed to pay certain unsecured obligations of Poultry. Oct. 1996 Order, ¶ 21.

4. In his January 31, 1994 Order, Associate Justice Patrick J. King made, inter alia, the following findings of fact:

4. [Haulers] and [Sunrise] performed the exact same business operations as [Poultry] and [Provision], utilized the same employees, operated out of the same business location and were managed by the same management, William Maltais;

5. [Haulers] is nothing more than the "alter ego" of [Poultry] and [Provision] and were incorporated respectively [sic], when the prior

companies were experiencing financial difficulties;

6. The intent of incorporating [Haulers] was to allow for a continuation of the prior businesses free from the claims of the creditors thereby delaying the collection efforts by the creditors of the prior companies of the debts due them and creation of [Sunrise] was no more than an accomdation [sic] by [a friend of William's] to allow for the further continuation of the business;

7. This court adopts the findings of fact and conclusions of law of the United States Bankruptcy Court for the District of New Hampshire in the case *Re: Northeast Poultry Haulers, Inc.*, Case Number 93–12132JEY to the extent that [Haulers] is the alter ego of the prior companies[.]

■ At the hearing on the Plaintiff's Motion, the Court denied summary judgment under § 523(a)(6) against Mr. Maltais on account of a defense raised by Mr. Maltais that Columbia Farms suffered from "unclean hands," for reasons not relevant here. The affidavit filed by Mr. Maltais relative to that defense raised a genuine issue of material fact. However, the Plaintiff also argued that if the Court ultimately made the required finding as to Mr. Maltais, his actions could be imputed to his wife. If the Plaintiff's case against Mrs. Maltais is grounded primarily on imputation, it is appropriate that the issue be resolved now, since the Plaintiff's case against Mr. Maltais under § 523 has been mooted by its success on the § 727(a) count. Accordingly, for the purposes of this decision, the Court will assume that Mr. Maltais acted willfully and maliciously, as provided in § 523(a)(6), and will determine whether those acts can be imputed to Mrs. Maltais.

■ In analyzing whether Congress intended for courts to impute willful and malicious injuries from a partner or agent to the debtor for § 523(a)(6) purposes, "[t]he court must first look to the text of the statute and construe its terms according to the plain meaning." *Deroche v. Miller (In re Miller)*, 196 B.R. 334, 336 (Bankr.E.D.La.1996) (citing *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). Exceptions to discharge must be "narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir.1994). Further, "[a] statute must, if possible, be construed in such a fashion that every word has some operative effect." *Miller*, 196 B.R. at 336 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992)).

Section 523(a)(6) expressly provides that dischargeability of a debt will be precluded in the event that it arises from willful and malicious injury "by the debtor." In *Miller*, after noting the presence of the phrase "by the debtor" in the statute, Judge Brown stated: "Thus, the plain meaning test requires that the debtor must have been the one who caused the willful and malicious injury. Imputed liability is insufficient." 196 B.R. at 336. Further, in this District, Judge Queenan has agreed that the acts of another cannot be imputed to the debtor for the purposes of § 523(a)(6), commenting:

> [A] judgment against a debtor based on acts of an agent is not within the meaning of the exception to discharge of a debt for willful and malicious conduct. Section 523 of the Code, as a whole, is aimed at individual conduct of the debtor deemed so socially reprehensible as to be unworthy of a discharge in bankruptcy. This is made clear by the wording of the statute itself, which requires that the action at issue be "by the debtor." Therefore, a judgment based on actions for which the debtor may be legally responsible but which were not performed by the debtor is outside the scope of both the language and intent of the statute.

*Bairstow v. Sullivan (In re Sullivan)*, 198 B.R. 417, 418–19 (Bankr.D.Mass.1996); *see also Piccicuto v. Rex (In re Rex)*, 150 B.R. 505, 506 (Bankr.D.Mass.1993), *rev'd on other grounds sub nom. Piccicuto v. Dwyer*, 39 F.3d 37 (1st Cir.1994).

Most other courts addressing the issue have followed this reasoning.[5] However, two published decisions have held contrary to *Miller* and *Sullivan*. *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir.1986); *Oetker v. Bullington (In re Bullington)*, 167 B.R. 157 (Bankr. W.D.Mo.1994). In *Cecchini*, the Court of Appeals for the Ninth Circuit imputed the knowledge and intent of the blameworthy

---

5. *See Jones v. Graham (In re Graham)*, 191 B.R. 162, 165 (Bankr.W.D.Mo.1995); *Giuliano v. Albano (In re Albano)*, 143 B.R. 323, 324–25 (Bankr.D.Conn.1992); *Federal Deposit Ins. Corp. v. Calhoun (In re Calhoun)*, 131 B.R. 757, 762–63 (Bankr.D.D.C.1991); *Federal Deposit Ins. Corp. v. Figge (In re Figge)*, 94 B.R. 654, 670 (Bankr. C.D.Cal.1988); *Jones v. Whitacre (In re Whitacre)*, 93 B.R. 584, 585 (Bankr.N.D.Ohio 1988); *Yelton v. Eggers (In re Eggers)*, 51 B.R. 452, 454 (Bankr. E.D.Tenn.1985); *Thatcher v. Austin (In re Austin)*, 36 B.R. 306, 310–12 (Bankr.M.D.Tenn. 1984).

partner to the innocent debtor-partner, relying on "basic partnership law." 780 F.2d at 1444. The court cited as authority a Supreme Court case, *McIntyre v. Kavanaugh*, 242 U.S. 138, 139, 37 S.Ct. 38, 39, 61 L.Ed. 205 (1916), which involved § 17(2) of the Bankruptcy Act of 1898, the predecessor of § 523(a)(6). The reasoning of the Bankruptcy Court for the Western District of Missouri in *Bullington* mirrored that of the Ninth Circuit in *Cecchini.* 167 B.R. at 163.

This Court is unpersuaded by the reasoning of these two cases. Reliance on partnership law principles of vicarious liability ignores the explicit plain meaning of the statute, i.e., that the misconduct must be performed "by the debtor." While vicarious liability principles were the basis for the Supreme Court's holding in *McIntyre*, the statute involved there did not provide that the willful and malicious injury must be caused "by the debtor." *See McIntyre*, 242 U.S. at 139, 37 S.Ct. at 39 (as originally enacted, § 17(2) of the 1898 Bankruptcy Act provided: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except ... judgments in actions for ... willful and malicious injuries to the person or property of another"). Finally, it is noteworthy that nineteen months after it decided *Cecchini*, the Ninth Circuit suggested that it had some reservations about that decision. In *La Trattoria, Inc. v. Lansford (In re Lansford)*, 822 F.2d 902 (9th Cir.1987), the court stated:

> In *In re Cecchini*, ... this court cited basic partnership law to hold that a business partner's debt was non-dischargeable because he had "participated in the benefits" of his partner's misconduct, which had been undertaken on behalf of the partnership and in the ordinary course of business.... Were we to rely on strict agency or partnership principles, we might be forced to conclude that Cecily Lansford's debt is non-dischargeable regardless of her knowledge of the fraud or her own culpability. In light of the [B]ankruptcy [C]ode's purpose of providing a fresh start ... and the decisions of other circuits refusing to apply agency principles absent some culpability on the part of the party to be charged, ... we believe the breadth of the proposition stated in *Cecchini* deserves more thorough consideration before its application to the circumstances presented in this case.

822 F.2d at 904–05 (citations omitted). This Court agrees with the concern raised by the *Lansford* decision. The imputation of the acts of a third party to deny the dischargeability of a debt appears to this Court to be inconsistent with its twin mandates to provide a fresh start to the honest debtor and to do equity within the confines of the Bankruptcy Code.[6]

---

6. The Court need not reach today the more difficult question of whether misconduct should be imputed from an agent or partner to an innocent debtor under other exceptions to discharge, such as, e.g. for "false pretenses, a false representation, or actual fraud" under § 523(a)(2)(A). In applying that provision, several courts have held that the misconduct of a third party could be imputed to the debtor. *See, e.g., Strang v. Bradner*, 114 U.S. 555, 561, 5 S.Ct. 1038, 1041, 29 L.Ed. 248 (1885) (applying the predecessor of § 523(a)(2)(A)); *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1561 (6th Cir.1992); *Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1282–83 (5th Cir.1992); *Eppard v. Sestito (In re Sestito)*, 136 B.R. 602, 605–06 (Bankr.D.Mass.1992) (Goodman, C.J., sitting by designation); *Calhoun*, 131 B.R. at 760–62; *Love v. Smith (In re Smith)*, 98 B.R. 423, 426–27 (Bankr.C.D.Ill.1989); *Figge*, 94 B.R. at 655–56; *Fluehr v. Paolino (In re Paolino)*, 75 B.R. 641, 648–50 (Bankr.E.D.Pa.1987). However, the opposite conclusion has been reached in other cases. *See Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1877) (applying the predecessor of § 523(a)(2)(A)); *Walker v. Citizens State Bank (In re Walker)*, 726 F.2d 452, 454 (8th Cir.1984) (holding that in order to impute fraud to a debtor, it must be shown that the debtor knew or should have known of the fraud, or was recklessly indifferent to the act of his agent); *Bay Loan & Inv. Bank v. Graul (In re Graul)*, 152 B.R. 413, 414–15 (Bankr.D.R.I.1993); *Chios v. Klein (In re Klein)*, 58 B.R. 397, 398 (Bankr.E.D.Pa.1986); *Band of Knights Booster Club v. Norton (In re Norton)*, 34 B.R. 666, 668 (Bankr.D.Ariz.1983). For a scholarly discussion of both the majority and minority positions, *see* Steven H. Resnicoff, *Is it Morally Wrong to Depend on the Honesty of Your Partner or Spouse? Bankruptcy Dischargeability of Vicarious Debt*, 42 Case W.Res.L.Rev. 147 (1992) (concluding that misconduct should not be imputed to innocent debtors); Lawrence Ponoroff, *Vicarious Thrills: The Case for Application of Agency Rules in Bankruptcy Dischargeability Litigation*, 70 Tul.L.Rev. 2515 (1996) (concluding, in general, that misconduct should be imputed).

## III. CONCLUSION

■ This Court agrees with the majority who have ruled that non-dischargeability of a debt under § 523(a)(6) cannot be grounded on the imputation to the debtor of the acts of another. Accordingly, even assuming that Mr. Maltais acted willfully and maliciously in connection with the debt owed to Columbia Farms, Columbia Farms' motion for summary judgment against Mrs. Maltais under § 523(a)(6) must fail. A separate order shall issue in conformity herewith.