**In re Jeffrey A. OLIPHANT, Debtor.**

**TAYLOR FREEZER SALES OF ARIZONA, INC., an Arizona corporation, Plaintiff,**

v.

**Jeffrey A. OLIPHANT, Defendant.**

**Bankruptcy No. 96–14160–PHX–CGC. Adversary No. 97–214.**

United States Bankruptcy Court, D. Arizona.

March 27, 1998.

---

Steven N. Berger, Joseph E. Cotterman, Galagher & Kennedy, P.A., Phoenix, AZ, for Jeffrey A. Oliphant.

Carolyn R. Matthews, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, AZ, for Taylor Freezer Sales of Arizona, Inc.

David A. Birdsell, Trustee.

## ORDER RE: 1) DEBTOR'S MOTION TO DISMISS; AND 2) PLAINTIFF'S MOTION TO LIFT STAY

CHARLES G. CASE, II, Bankruptcy Judge.

### I. INTRODUCTION

This matter arises from Debtor Jeffrey A. Oliphant's Motion to Dismiss and Plaintiff

Taylor Freezer Sales of Arizona, Inc.'s ("Plaintiff's") Motion to Lift Stay. Debtor seeks to dismiss adversary 97–214 on the ground that Plaintiff fails to state a claim upon which relief can be granted. Plaintiff filed adversary 97–214 to the determine the dischargeability of certain debts incurred while Debtor was married, in particular a superior court judgment finding Debtor's former wife, Julie Oliphant, embezzled nearly $500,000 from Plaintiff. Plaintiff believes this debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(4) and Arizona community property law. Plaintiff in turn seeks relief from the automatic stay to allow the Maricopa County Superior Court to enter judgment in case number CV 96–03987 and allow "such further proceedings as may be necessary to render said judgment final and from which no further appeals may be taken." [1]

## II. FACTS

The following facts are undisputed. Debtor and Ms. Oliphant were married. During their marriage, Plaintiff employed Ms. Oliphant as its bookkeeper from October 16, 1990, until February 16, 1996. In March, 1996, Plaintiff sued Ms. Oliphant and Debtor in Maricopa County Superior Court, alleging that Ms. Oliphant embezzled nearly $500,000 from Plaintiff. Plaintiff alleged conversion, fraud, negligent misrepresentation, pattern of unlawful activity, breach of employment contract, and constructive fraud. Plaintiff sought judgment against Ms. Oliphant individually and the Oliphants' marital community. Debtor and Ms. Oliphant admitted in the state court proceedings that the embezzlement benefitted the marital community. Plaintiff presented evidence that portions of the money were deposited directly into the couple's joint checking account and used by both to pay bills.

Plaintiff moved for summary judgment, and the trial court granted Plaintiff summary judgment against Ms. Oliphant individually and the marital community on all counts alleged. The court denied Plaintiff summary judgment against Debtor as to his sole and separate property. Plaintiff lodged a proposed form of judgment, seeking judgment against Ms. Oliphant's sole and separate property and against the marital community of Debtor and Ms. Oliphant. On December 24, 1996, before the judgment was signed, Debtor filed bankruptcy. Plaintiff then withdrew its proposed form of order and submitted a new one seeking judgment against Ms. Oliphant only—as to her sole and separate property and her portion of the community's property. Plaintiff notified the superior court that it intended to seek relief from the automatic stay in this Court to allow the superior court to enter judgment against Debtor's share of the marital community. On March 5, 1997, the superior court signed the judgment against Ms. Oliphant's sole and separate property in the amount of $473,-713.92, plus post-judgment interest. The only finding by the superior court relevant to Debtor was against the "marital community of Julie A. Oliphant and Jeffrey A. Oliphant." Judgment has never been entered against Debtor. On April 1, 1997, the Oliphants divorced.

Plaintiff then filed adversary proceeding number 97–0214, arguing that Debtor is liable to Plaintiff out of his portion of the community property for some as yet undetermined amount and that that amount, once determined, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). Plaintiff alleges that Ms. Oliphant's fraud and embezzlement is attributable to Debtor's portion of the marital community because (1) Debtor knew or should have known that the receipt of nearly half a million dollars into the community was obtained by fraud; (2) Ms. Oliphant's actions were done on behalf of the marital community; and (3) Debtor, individually and as a member of the marital community, benefitted and shared in the fraudulently received monies.

## III. DISCUSSION

### A. *The Issue*

The issue presented is whether the pleadings as they stand support dismissal of a

---

1. This memorandum decision addresses both the motion to dismiss brought under adversary number 97–214 and the motion to lift stay brought under bankruptcy number 96–14160.

§ 523 claim against an "innocent" spouse where the fraud giving rise to the creditor's claim was committed by the other spouse. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) ("court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). The question involves questions of both federal nondischargeability law and Arizona community property law. Debtor argues that Plaintiff's claim cannot be excepted from discharge under § 523 where Plaintiff has not alleged that Debtor engaged in culpable conduct or acted with fraudulent intent and where no post-discharge community property exists. No court has addressed this precise issue; it is one of first impression.

### B. Arizona Law

■ The analysis should begin with Arizona law. Outside of bankruptcy, a marital community may be liable for the intentional torts of one spouse if the tort was done for the benefit of the community. *In re LeSueur,* 53 B.R. 414, 416 (Bankr.D.Ariz.1985); *Selby v. Savard,* 134 Ariz. 222, 229, 655 P.2d 342, 349 (1982). Strictly speaking, therefore, the pre-existing community was liable under state law because there was no dispute the community benefitted from Ms. Oliphant's embezzlement. Further, in the event of a divorce, each former spouse remains individually liable to creditors of the former community. *Community Guardian Bank v. Hamlin,* 182 Ariz. 627, 631, 898 P.2d 1005, 1009 (1995). "Divorce does not absolve spouses of their community obligations." *Id.* Therefore, an obligation of the former community may be collected from post divorce separate property of each former spouse and from post divorce property of a new community to the extent of the former spouse's contribution thereto. Arizona Revised Statutes Annotated ("A.R.S.") § 25–215(B). The wrinkle here is that Plaintiff seeks to have that obligation determined to be non-dischargeable. If this case did not involve a bankruptcy, Plaintiff would be able to collect on its judgment from Debtor's post divorce separate property. Therefore, Debtor's claim that this case should be dismissed because there is no post divorce community property from which Plaintiff can recover is misplaced.

### C. Federal Bankruptcy Law

The question now becomes whether, under federal bankruptcy law, this former community debt may be excepted from discharge. Debtor argues that his former community debt arising out of the intentional tort of his non-debtor, former spouse is dischargeable because he did not himself engage in any culpable conduct and did not have any intent to defraud Plaintiff. He argues that the fact that the community may have benefitted from the fraud or that he may have known or should have known of the fraud is insufficient under § 523(a)(2)(A) and (a)(4) to render the debt nondischargeable. Debtor relies on several cases for this proposition.[2] *In re Bursh,* 14 B.R. 702 (Bankr.Ariz.1981); *In re LeSueur,* 53 B.R. 414 (Bankr.Ariz.1985); *In re Norton,* 34 B.R. 666 (Bankr.Ariz.1983); *In re Clark,* 179 B.R. 898 (Bankr.Ariz.1995). A brief look at each, however, reveals they are quite distinguishable.

In *Bursh,* the husband converted funds held by him in trust. Thereafter, the wife alone filed for bankruptcy. There was no allegation or any proof that she participated in the fraudulent conduct or that she had any *knowledge* of the conduct. 14 B.R. at 704. In this case, Plaintiff has at least alleged that Debtor knew or should have known that the money was fraudulently received. In *LeSeuer,* both spouses were debtors and the issue was whether the "innocent" spouse's portion of the community property could be exempted from the nondischargeable community judgment arising out of the "wrongdoing" spouse's fraud. The court found no support for this, stating that but for the bankruptcy, creditors would be able to reach

**2.** Section 523(a)(2)(A) and (4) provides that "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—... (2) for money, property, services, or an extension, renewal, or refinancing of credit., to the extent obtained by—... (A) false pretenses, a false representation, or actual fraud.... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

the "innocent" spouse's portion of the community property. Therefore, the court held that all after-acquired community property would be subject to the nondischargeable debt even though there was no evidence of wrongdoing on the part of the "innocent" spouse. Further, an actual finding had been made that the wife was an "innocent" spouse. That issue has not been addressed here beyond the bare allegations of the complaint.

In *Norton,* the court dismissed a § 523(a)(2) complaint as to the debtor wife where there was no evidence that she had participated in the fraud. The court was silent, however, on the critical issue here—whether the community nevertheless was liable. *Clark* is closer on point, stating that benefitting the community may not be enough to except a claim from discharge under § 523. However, the court focused on the fact that plaintiff failed to show that the wrongdoing spouse committed the fraudulent acts with the *intent* to benefit the community. 179 B.R. at 902. This Court is not convinced that this is the precise question to be asked. Moreover, while the *Clark* court stated that a nondischargeability judgment should only be entered against the community's property when evidence at trial proves that both spouses were involved in the fraudulent behavior, it did not elaborate on what constitutes involvement, as it was unnecessary to reach this issue. *See id.* The *Clark* court was not faced with any allegations in that case that the "innocent" spouse knew or should have known of the fraudulent conduct, a question that remains open here.

Debtor further argues that even if he had knowledge of Ms. Oliphant's fraudulent conduct and the community benefitted, that is not enough to impute culpability to him under § 523. For this proposition, he relies on several Florida cases. In particular, he relies on. *In re Mart,* 75 B.R. 808 (Bankr.S.D.Fla.1987), in which the court refused to deny the "innocent" spouse a discharge under § 727(a)(2)(A) where there was no evidence she colluded or acted with her husband. The court stated that "fraudulent intent of a husband is not necessarily imputed to his wife from the fact that the wife derived a benefit from the husband's

conduct, even if the wife had knowledge of his misconduct, which I do not believe to be the case in this instance." 75 B.R. at 810. This unsupported statement is clearly dicta, however, as the court found the wife did not have knowledge of her husband's wrongdoing. And, while the Code may not allow attribution of intent from one spouse to another, *In re Reed,* 700 F.2d 986, 993 (5th Cir.1983), that does not mean that knowledge by the "innocent" spouse and benefit to the marital community is insufficient to give rise to an inference that one spouse shared in the other spouse's fraudulent conduct and had the requisite intent him or herself. In fact, *Reed* itself acknowledged that the evidence could have supported an "inference" that the wife shared in the husband's fraudulent intent but concluded the bankruptcy court's finding to the contrary was not clearly erroneous. 700 F.2d at 993.

Plaintiff counters that knowledge and community benefit are sufficient to establish culpable conduct on the part of Debtor. Plaintiff has failed to produce any cases from community property jurisdictions to support this position. Instead, it relies by analogy on several agency law cases. *In re Luce,* 960 F.2d 1277 (5th Cir.1992); *In re Lansford,* 822 F.2d 902 (9th Cir.1987). These cases too are factually distinguishable. For example, *Luce* involved a husband and wife who were partners in several partnerships. The husband engaged in conduct rendering his debts nondischargeable under § 523(a). The court refused to discharge the wife's debts to the creditors because she benefitted, *as a business partner,* in the proceeds of her partner's (husband's) fraudulent conduct. The analysis, however, was based purely on agency principles and not on community property law. Plaintiff's reliance on *Lansford* is similarly unhelpful to this case, as the *Lansford* court expressly declined to decide whether agency principles would render the debt nondischargeable in the absence of some culpability on the part of the "innocent" partner (spouse). This issue did not need to be decided because there was evidence from which the court could conclude that Ms. Lansford had in fact engaged in deception such that the debt would be nondischarge-

able under § 523. 822 F.2d at 904–05. Additionally, for agency principles to apply, it is not enough that the debtors are spouses; a business relationship between the spouses must exist. *See In re Allison,* 960 F.2d 481, 485 (5th Cir.1992); *In re Savage,* 176 B.R. 614, 616 (Bankr.M.D.Fla.1994). This is absent in this case.[3]

The common thread in these cases (in particular the Arizona community property and § 523 dischargeability cases) is that Plaintiff must show culpable conduct or fraudulent intent on the part of the "innocent" spouse in order for the debt to be nondischargeable in the "innocent" spouse's bankruptcy. This is true even though Arizona community property law would continue to hold the "innocent" spouse liable post-divorce, without such a showing, for the pre-divorce community liability arising from the intentional tort of the other former spouse. The question then becomes what must Plaintiff plead or prove to establish such culpable conduct or intent and whether the complaint suffices in this case.

▪ Fraudulent intent will not be presumed. *In re Bursh,* 14 B.R. at 705–06. As stated earlier, however, it may be proven inferentially. The "innocent" spouse's knowledge of the other spouse's fraudulent conduct may be relevant to an inference of fraudulent intent, depending on the nature and extent of such knowledge and on whether there are other relevant facts that bolster the inferential value of the knowledge. In certain cases, knowledge itself may be inferred where the facts and circumstances are so egregious that denial of knowledge is simply not credible. Fraudulent intent also may be inferred from other facts. For example, the nature and extent of the benefit conferred to the "innocent" spouse may be so great or unusual that it is reasonable to conclude that the "innocent" spouse engaged in fraudulent activity him or herself.

▪ Under this test, this Court believes Plaintiff's complaint sufficiently alleges

fraudulent intent to survive a motion to dismiss. Whether the facts are sufficient to support judgment in favor of Plaintiff is another question. And, this Court does not find that the superior court proceedings were sufficiently complete to collaterally estop Plaintiff from pursuing his complaint. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Nor is the evidence sufficient at this time to give rise to an inference that there are no facts to support Plaintiff's claim. Those issues must await trial, which brings us to Plaintiff's Motion for Relief from Stay.

Relief from stay at this point for entry of a final judgment in the superior court is unnecessary and potentially disruptive to these proceedings given the resulting triggering of deadlines for post-trial motions and appeals. This Court's determination of the dischargeability issue is best decided first, as it could render the state court proceedings moot. If the parties wish to reach an agreement as to the entry of a final judgment and the continued existence of the stay to prevent any appeals or post-trial motions, however, this Court may reconsider and allow parties relief from the stay for that limited purpose. Otherwise, the question of dischargeability is best resolved first.

## IV. CONCLUSION

Therefore, for the foregoing reasons, this Court denies Debtor's Motion to Dismiss and denies Plaintiff's Motion for Relief from Stay. Debtor has ten days from the date of this Order to file an Answer. Thereafter, an order will issue setting a Rule 7016(b) conference and invoking compliance with Rules 7026(a) and (f).

So ordered.

---

**3.** While this Court recognizes that *In re Walker,* another case Plaintiff relies on, did not involve spouses who were actually in business for one another, the court found that the culpable spouse was acting as the agent for the "innocent" spouse when he took ill and could not run the business. The court was willing under agency principles to impute culpability to the "innocent" spouse on the ground that he should have paid at least some attention to the affairs of his business and discovered the fraud. 726 F.2d 452, 454 (8th Cir.1984).